BALDWIN v. NORTH SHORE ESTATES ASSOCIATION

1. Associations—Summer Resort—Owners' Association—Jurisdiction—Area Affected.
    Trial court's conclusion that "territory to be affected" means "*contemplated* territory to be affected" in a statute authorizing incorporation of groups of resort owners whose elected trustees may for certain purposes take jurisdiction over the land of an owner who does not join such corporation "after a body politic and corporate has been incorporated under this act in the territory to be affected and has continued to function as such for a period of two years," *held*, not unreasonable (CL 1948, § 455.206).

2. Constitutional Law—Courts—Questions Decided.
    Appellate courts of this state do not reach constitutional questions when a case can be fairly disposed of on other grounds.

---

References for Points in Headnotes
[1] 6 Am Jur 2d, Associations and Clubs § 5.
[2] 5 Am Jur 2d, Appeal and Error § 873.
[3] 25 Am Jur 2d, Elections §§ 66–68.

3. Words and Phrases—Resided—Definition—Statutory Purpose. The term "resided" should be defined in light of the object or purpose of the statute in which it is employed; and the statutory requirement that a person have "resided" in a resort area on weekends for one month before he can vote on whether the entire territory comprising his subdivision should be entirely incorporated is satisfied if the person desiring to vote has owned property in the "territory to be affected" for four weekends in the month preceding the election, since it would be arbitrary, discriminatory, and unreasonable to require a person to do more than this to protect his actual personal interest (CL 1948, §§ 455.206, 455.206c).

Appeal from Ottawa, Smith (Raymond L.), J. Submitted Division 3 October 10, 1968, at Grand Rapids. (Docket No. 4,284.) Decided December 24, 1968. Rehearing denied January 29, 1969. Leave to appeal granted August 5, 1969. See 382 Mich 772.

Complaint for declaratory judgment by Ralph B. Baldwin, Lois J. Baldwin, June Noble Foote, P. Craig Welch and others similarly situated, against the North Shore Estates Association to question the jurisdiction and legality of incorporation of the latter. Judgment for defendant. Plaintiffs appeal. Reversed.

*Edward C. McCobb,* for plaintiffs.

*Guerry B. McNabb,* for defendant

Fitzgerald, J. North Shore Estates Association is a nonprofit corporation voluntarily founded in 1959 to exercise control over platted resort property in Ottawa county. The purpose was to take over the management of the access road running through the 5 subdivisions of the property following termination of responsibility by the developer in 1958. The articles of incorporation provided that an election

be held 2 years thence to determine whether the association should have jurisdiction over all the property owners (CL 1948, § 455.206 [Stat Ann 1963 Rev § 21.756]). To be "qualified" to vote, a property owner must have been: (1) a "qualified" voter of the State of Michigan, and (2) a weekend resident of the area for 1 month preceding the election. Few people could qualify (19%), and none of the people in plaintiffs' subdivision to the far south voted to come under the jurisdiction of the association in 1962. Only 1 property owner there was "qualified". The association now levies assessments and exercises general control over the area. The motivation for this action is found in the attempt of the association to pave and widen the road which would necessitate reaching the edge of the right-of-way. This is not the issue of the appeal.

Plaintiff sued in common interest, requesting a declaratory judgment, which was denied by the Ottawa county circuit court in favor of defendant, plaintiff appealing.

Relevant portions of CL 1948, § 455.201 *et seq.* (Stat Ann 1963 Rev § 21.751 *et seq.*), to this appeal include:

"Sec. 1. That any number of *freeholders* not less than 10, who may desire to form a summer resort owners corporation for the better welfare of said community and for the purchase and improvement of lands to be occupied for summer homes and summer resort purposes, may, with their associates and successors, become a body politic and corporate." CL 1948, § 455.201; CL 1929, § 10363.

"Sec. 4. On compliance with the foregoing provisions of this act, the persons so associating, their successors and assigns, shall become and be a body politic and corporate, under the name assumed in their articles of association and *shall have and possess all the general powers and privileges and*

*be subject to all the liabilities of a [municipal] corporation* [and become the local governing body]." CL 1948, § 455.204; CL 1929, § 10366.

"Sec. 6. Persons eligible to membership in said corporation, at any and all times, must be freeholders of land in the county of its organization and *such land must be contiguous* to the resort community in which the corporation is organized: Provided, however, It shall not be necessary that the lands of all members shall join, but it shall be sufficient if such *lands are reasonably adjacent* to the resort community, so as to be benefited by membership therein, and *the trustees of the corporation,* when lawfully authorized by the corporation, *shall be judges as to whether the lands of such proposed members are sufficiently identified with the common interests of the other lands* embraced within said corporate jurisdiction, to make proposed members eligible: And provided further, That the land of no owner that does not voluntarily join such corporation can be compelled to come under the jurisdiction of the corporation [*until after a body politic and corporate has been incorporated under this act in the territory to be affected* and has *continued to function as such for a period of 2 years.* Thereafter an election may be called by the board of trustees or board of directors within *the territory to be affected* for the purpose of determining *whether the entire territory comprising the subdivisions or parts of subdivisions* affected should become entirely incorporated.]" CL 1948, § 455.206; CL 1929, § 10368.

"Sec. 6c. For the purpose of such election all freeholders who have *resided week-ends in the territory to be affected for a period of 1 month prior to such election* and who are *qualified voters in any voting precinct of the state of Michigan* at general elections, are qualified voters for the purpose of this act." CL 1948, § 455.206c.

"Sec. 6e. If a majority of the said qualified voters of the entire territory comprised in the territorial description contained in the notice of election shall

vote in favor of the incorporation under this act, then the said board of trustees or directors shall declare the entire territory so affected to be incorporated under this act." CL 1948, § 455.206e.

"Sec. 7. Members admitted to said corporation at its organization and *afterwards,* shall file with the secretary of said corporation a writing, subscribed, witnessed and acknowledged, in accordance with the requirements of deeds, which writing *shall grant to the corporation the right to exercise all jurisdiction,* conferred by this act, over the lands owned by members of said corporation. Such grant of authority to the corporation shall be duly recorded in the office of the register of deeds of the county." CL 1948, § 455.207; CL 1929, § 10369. (Emphasis supplied.)

The noted portions of sections 4 and 6 (in brackets), and the subsections, were added by amendment in 1939 to the 1929 act. The jurisdictional portions of the statute have not been examined in the courts of this State.

Plaintiffs' first argument concerns the original jurisdiction of the association and the extent of the "territory to be affected" under section 6, such territory allegedly being comprised only of those lands of the people who gave grants of authority to the association to assume jurisdiction in 1959 under section 7, thus invalidating the 1962 election as to those owners who did not so authorize. During the subsequent 2 years, the association allegedly had no jurisdiction as a "body politic" over plaintiffs' particular subdivision as there was no authority voluntarily granted to the association from that subdivision.

The lower court held, concerning "body politic", that, "In order to make any sense out of this requirement, the words 'territory to be affected' must be construed to mean the *contemplated* territory to be affected. Otherwise the association would be *unable*

[*sic*] to annex only that which they already had",
agreeing with defendant that although plaintiffs
gave no grant after the 1962 election, plaintiffs still
are members, albeit involuntarily, by reason of the
"contemplation" of the board of trustees. At all
times the association fully complied with the pro-
visions of the statute. It is not our desire to debate
the wisdom of the legislature in permitting this
involuntary surrender of control of private prop-
erty, but we may interpret a heretofore undefined
statute with a view to the legislative intent in light
of the actions of the defendant.

The road ran through all of the subdivisions
created by the developer. The association was
created under section 6 by certain owners from the
northern subdivisions who were "trustees" permit-
ted to judge if the other lands were "sufficiently
identified with the common interests", and then in-
clude owners of these lands in the electorate where
"qualified". We recognize plaintiffs' concern with
the trial court's inclusion of the word "contemplated"
when defining "territory to be affected", but hold it
not unreasonable as this trial court apparently was
the first to attempt an interpretation of the intent
of the legislature as to the powers given in a vague
and indefinite statute.[1] As section 6 permits the
trustees to be "judges", and since judges do contem-
plate on occasion, we cannot say that plaintiffs' sub-
division could not be a territory to be affected in
the determination of the trustees, considering the
area of the original development, the location of the
road, the purposes for the incorporation, and the
contiguity of the land. We are not in accord with
the rigid demands of the statute as to inclusion of
the "entire territory" following the election where
such jurisdiction permitting subsequent assessment

---

[1] Sutherland, Statutory Construction, §§ 4508, 5402, 5505.

and controls was established by a small group of voluntary members over a large number of other unwilling property owners. However, it is not within our function to rewrite statutes with which we disagree.

Plaintiffs have alleged that section 6c violates the equality of class legislation required by the equal protection language of the 14th Amendment. They abhor the "4 weekends" requirement which allegedly disqualified all the voters save 1 in their subdivision from voting on a proposition that has deprived them of the use of their private property by means of assessment and control by the association. They find arbitrary discrimination against summer freeholders in favor of permanent residents who easily meet the requirements. A fertile mind will expand upon the following inconveniences to summer freeholders which could prevent them from meeting the requirements of this section as applied: most families would have to live in a tent or under a tree, as they had not yet built homes; illness; business obligations; car trouble; absence of 1 weekend day after 30 days of living on the land; the election could be called in the winter; *ad infinitum.*

However, appellate courts of this State do not reach constitutional questions when the case might be fairly disposed of on other grounds.[2] Thus, we examine the word "resided" and interpret it with reference to the stated purposes and subject matter of the entire statute. Typically, and even precedentially, the words "resided" and "residence" have been interpreted to require that a permanent dwelling or abode be maintained upon the land.[3] The

[2] *In re Winkle* (1964), 372 Mich 292; *Cole* v. *City of Battle Creek* (1941), 298 Mich 98, citing cases.

[3] See definition of these words at 37 Words and Phrases; *Reaume and Silloway, Inc.,* v. *Tetzlaff* (1946), 315 Mich 95. Note, though, that many cases consider *intention* to be of paramount importance,

vast majority of those cases so holding deal with issues of service of process, divorce, estates, exemptions, taxes and torts, where the location of one, and only one, residence must be determined to prevent avoidance of legitimate local interests in the business or behavior of the "resident". Plaintiffs here are *not* attempting to avoid a determination of residency.

The increasing use and development of the resort home and property as a place of escape for the weary urban resident requires a re-evaluation of the accepted definition.[4]

Resort property is a substantial long-term investment for such people, the lot being purchased first with construction to follow at some indeterminate time dependent upon such variables as weather, financial ability and age. In the present case, the vacant resort lot owner is assessed and the use of his property may be subject to certain controls. He should reasonably have some say in the operation of the association, which he does not have under the current situation. Reference is made to the case of *McGrath* v. *Stevenson* (1938), 194 Wash 160 (77 P2d 608), wherein the Supreme Court of the State of Washington found that the term "resided" should be interpreted in light of the object or purpose of the statute in which it is employed. The case is directly on point with our decision here in that plaintiff there was also a summer resort owner concerned

and that flexibility in determining residency is preferable. Proof of domicile may vary considerably according to the circumstances of each case. *In re Fox Estate* (1966), 3 Mich App 501.

[4] Thus, definitions such as those found in the following cases can have little value as precedent here: *Ellison* v. *Smoots, Admr.* (1941), 286 Ky 768 (151 SW2d 1017), a person can have but one legal residence; *Welch* v. *Shumway* (1907), 232 Ill 54 (83 NE 549), a man can have but one domicile at a time; *Barrett* v. *Parks* (1944), 352 Mo 974 (180 SW2d 665). But see *McGrath* v. *Stevenson* (1938), 194 Wash 160 (77 P2d 608), discussed *infra*.

with use of the common road which could be controlled by a vote of "ten freeholders residing in the area". We quote portions of that decision and adopt them as the opinion of this Court:

"A man may have a summer home, \* \* \* and also a place of permanent abode. 'Residing', as used in the [particular] statute [cited] is not employed in the sense of legal residence of a person with reference to his right of suffrage and eligibility to office. Clearly, the intention of the statute is to insure the execution of a petition by ten people [or more] having *an actual personal interest* in \* \* \* the road." (Emphasis supplied.)

Accordingly, we determine that to have "resided" for purposes of qualifying for summer resort association elections under the statute here considered, the freeholder must have owned property in the "territory to be affected" for 4 weekends in the month preceding the jurisdictional election. It is discriminatory, arbitrary and unreasonable of the association to require that they do more to protect their actual personal interests, but the statute is not unconstitutional as here interpreted. Plaintiffs, as freeholders, were "residing" for purposes of this particular election, and were "qualified" voters, as were any other freeholders who owned property for the 4 weekends preceding the election.

It follows that the appellee association cannot exercise any jurisdiction over plaintiffs and those similarly situated freeholders until all voters are given an opportunity to speak at the ballot box.

Reversed. No costs, interpretation of a statute being involved.

LESINSKI, C. J., and TEMPLIN, J., concurred.