## BALDWIN v. NORTH SHORE ESTATES ASSOCIATION

1. CONSTITUTIONAL LAW — EQUAL PROTECTION — SUMMER RESORT
   CORPORATIONS — CORPORATIONS — ELECTIONS — FREEHOLDERS —
   RESIDENCY.

   The section of the summer resort owners corporations act provid-
   ing that freeholders are qualified to vote if they have resided
   weekends in the territory to be affected for a period of one
   month prior to an election to determine whether the entire
   territory comprising the subdivisions or parts of subdivisions
   affected should be entirely incorporated thereunder bears no
   reasonable relationship to the legislative purpose for which
   the act was adopted and is constitutionally invalid, since it
   constitutes a denial to freeholders who did not reside on their
   land of equal protection of the laws as it grants privileges
   and benefits to a portion of the class of freeholders while
   denying them to the remaining class of freeholders (US Const,
   Am 14; Const 1908, art 2, § 1; MCLA § 455.206c).

2. CORPORATIONS — SUMMER RESORT CORPORATIONS — JURISDICTION —
   FREEHOLDERS — ELECTIONS — GRANTS OF AUTHORITY.

   A summer resort owners corporation cannot exercise any juris-
   diction over freeholders who were not permitted to vote at an
   invalid election held by that corporation to determine whether
   the entire territory comprising the subdivision or parts of
   subdivisions affected should be entirely incorporated thereunder
   at least until all affected freeholders are given an opportunity
   to speak at the ballot box or until they have voluntarily
   executed grants of authority pursuant to a section of the
   summer resort owners corporation act (MCLA § 455.207).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 25 Am Jur 2d, Elections §§ 58–60, 68.
[3] 50 Am Jur, Statutes § 353.
[4] 18 Am Jur 2d, Corporations §§ 9, 13, 27, 28.

3. STATUTES—CORPORATIONS—SUMMER RESORT—RESIDENCY REQUIRE-
MENT.

> The constitutionally invalid weekend residency requirement of
> the summer resort owners corporation act is severable from
> the remainder of the statute, and the remainder is in itself
> a complete act (MCLA §§ 8.5, 455.201 *et seq.*).

4. CORPORATIONS—SUMMER RESORT CORPORATIONS—FREEHOLDERS—
STATUTES.

> A summer resort corporation has not lost its legal corporate
> status and has operated consistent with the act under which
> it was incorporated only as to those freeholders who have
> executed grants of authority in accordance with the provisions
> of that statute (MCLA §§ 455.201 *et seq.*; 455.207).

Appeal from Court of Appeals, Division 3, Lesin-
ski, C. J., and Fitzgerald and Templin, JJ., revers-
ing Ottawa, Raymond L. Smith, J. Submitted June
2, 1970. (Calendar No. 4, Docket No. 52,366.) De-
cided September 22, 1970.

15 Mich App 289 reversed.

Complaint for declaratory judgment by Ralph B.
Baldwin, Lois J. Baldwin, June Noble Foote, P.
Craig Welch, and others similarly situated, against
the North Shore Estates Association to determine
the validity of an election held by the defendant and
for other relief. Judgment for defendant. Plain-
tiffs appealed to Court of Appeals. Reversed. De-
fendant appeals. Plaintiffs cross-appeal. Reversed
and remanded.

*McCobb, Heaney & Van't Hof,* for plaintiffs.

*Landman, Hathaway, Latimer, Clink & Robb* (by
*Guerry B. McNabb* and *Fredric A. Sytsma*), for
defendant.

T. M. KAVANAGH, J. The facts necessary for consideration of this appeal are:

North Shore Estates Association is a nonprofit corporation founded in 1959 pursuant to PA 1929, No 137[1] (sometimes referred to as the summer resort owners corporation act), to exercise control over five subdivisions of platted resort property in Ottawa County. The Association was formed to take over, manage, grade and maintain the access road running through the five subdivisions following termination of responsibility by the developer in 1958, to provide for police patrol and snow removal, and for other common purposes including the employment of a corporation attorney.

In compliance with § 7 of the statute, grants of authority were executed and recorded by all but one of the 35 original incorporators.

At a meeting held on July 21, 1962, a resolution was adopted calling for an election to be held, pursuant to § 6 of the applicable statute[2] under which the corporation was organized, to determine whether or not all of the North Shore Estates subdivisions would be brought under the jurisdiction of the corporation. Thereafter, in July, 1962, a letter was sent to all property owners in the North Shore Estates subdivisions announcing that, in accordance with the statute under which the organization was incorporated, an election would be held on August 31, 1962, for the purpose of determining if a majority of the eligible property owners would choose to have the Association act as the official organization for all of the North Shore Estates subdivisions.

To be qualified to vote at the election the statute required that a property owner must have been:

[1] MCLA § 455.201 et seq. (Stat Ann 1963 Rev § 21.751 et seq.).
[2] MCLA § 455.206 (Stat Ann 1963 Rev § 21.756).

(1) a qualified voter in the State of Michigan, and (2) a weekend resident of the area for a period of one month prior to the election.[3]

At the time of the election there were 12 buildings used as year-around dwellings and 28 used as summer houses within the area to be affected by the election, leaving a total of 98 vacant platted lots.

At the election conducted on August 31, 1962, of the more than 120 property owners only 23 qualified to vote. Only one of the 35 people in plaintiffs' subdivision qualified, and he did not vote. The vote was 18 for and 3 against bringing the additional territory under the jurisdiction of the Association. The Association now levies assessments and exercises general control over the area.

On September 10, 1963, a portion of the lots claimed by the Association after the election, consisting of lots numbered 1 through 35 of North Shore Estates Subdivision, were included in the incorporation of the City of Ferrysburg.

Plaintiffs sued in common interest in the Ottawa Circuit Court praying for a declaratory judgment upon the following issues:

(a) Is the North Shore Estates Association legally incorporated under the statute?

(b) Has the Association been operated, and is it now being operated, for purposes consistent with the statute?

(c) Has the Association since its incorporation lost its qualification for corporate status and its right to jurisdiction over the plaintiffs and other lot owners similarly situated for failure to operate within the purpose of said statute?

---

[3] "Sec. 6c. For the purpose of such election all freeholders who have resided weekends in the territory to be affected for a period one month prior to such election and who are qualified voters in any voting precinct of the State of Michigan at general elections, are qualified voters for the purpose of this act." MCLA § 455.206c (Stat Ann 1963 Rev § 21.756[3]).

(d) Does the Association have jurisdiction over lot owners who have not executed grants of authority in accordance with § 7 of the statute?

(e) Was the election conducted by the Association on August 31, 1962, legally effective to bring the entire North Shore Estates and the owners of lots therein under the Association and its jurisdiction?

(f) Are the provisions of PA 1929, No 137, as amended, under which the North Shore Estates Association became incorporated, and under which said Association thereafter determined that additional lands became part of and subject to the jurisdiction of the Association, unconstitutional and void under the Michigan Constitution of 1908, art 2, § 1,[4] and the 14th Amendment to the Constitution of the United States on the grounds that the plaintiffs and others similarly situated have been and are being deprived of property without due process of law by virtue thereof?

(g) Did the City of Ferrysburg, in incorporating lots 1 through 35 of North Shore Estates Subdivision, remove said lots and the roadway adjacent thereto from the Association and its jurisdiction?

The trial court answered all the issues contrary to the claims of the plaintiffs.

The Court of Appeals reversed the trial court and denied defendant jurisdiction over plaintiffs and those similarly situated freeholders "until all voters are given an opportunity to speak at the ballot box." 15 Mich App 289, 297. Defendant appeals to this Court on leave granted. 382 Mich 772.

Plaintiffs cross-appeal seeking decision on all issues, including the question of constitutionality of § 6c of the act, which issues were before the Court

---

[4] For parallel provisions of Michigan Const 1963, see art 1, §§ 1 and 2.

of Appeals but only one of which was decided by that Court.

Defendant frames the first issue as follows:

"Does the term 'resided', as found in § 6c of Act 137, Public Acts of 1929, as amended, require the physical presence of the freeholder, rather than mere ownership of property in the area to be affected by the jurisdictional election, for four weekends in order to qualify as a voter under said act?"

The Court of Appeals decided (p 297):

"Accordingly, we determine that to have 'resided' for purposes of qualifying for summer resort association elections under the statute here considered, the freeholder must have owned property in the 'territory to be affected' for four weekends in the month preceding the jurisdictional election. It is discriminatory, arbitrary and unreasonable of the association to require that they do more to protect their actual personal interests, but the statute is not unconstitutional as here interpreted. Plaintiffs, as freeholders, were 'residing' for purposes of this particular election, and were 'qualified' voters, as were any other freeholders who owned property for the four weekends preceding the election.

"It follows that the appellee association cannot exercise any jurisdiction over plaintiffs and those similarly situated freeholders until all voters are given an opportunity to speak at the ballot box."

Defendant contends that the interpretation placed on the statute by the Court of Appeals makes portions of the statute redundant and has the effect of divorcing the word "resided" from those words which precede and follow it in § 6c. Specifically, defendant argues that if "resident" is synonymous with "ownership" it would be ridiculous to require that a potential voter must have resided (i.e., owned property) on weekends in the area for a period of

one month prior to the election, since "ownership", unlike physical presence, is a continuing phenomenon, unlikely to occur only on weekends. It contends that such a construction of the statute clearly does not carry out the intention of the legislature.

Plaintiffs, on the other hand, argue that unless the Court of Appeals' interpretation is sustained a constitutional issue arises. They contend that the amendment of 1939[5] established a subclassification of those who could vote to force the jurisdiction of the Association on nonconsenting lot owners. Specifically plaintiffs argue that the weekend residency requirement of § 6c clearly results in an arbitrary and discriminatory subclassification which gives privileges to some freeholders and denies such privileges to other freeholders, contrary to the equal protection mandates of the state and Federal Constitutions.

Plaintiffs further contend that if owners of lots within the territory had not erected a dwelling in which it would be suitable to reside for weekends for a period of one month prior to the election, as was the case with many lot owners here, they would be denied the right to decide whether their property should come under the jurisdiction of the Association.

They point out that even if a property owner within the territory had a suitable dwelling within which he could reside weekends for a period of one month prior to the election, he would be denied his right to vote if for some reason he was absent or unable or did not desire to come to his dwelling for any one of the weekends.

Plaintiffs insist that the discriminatory effect of this provision is vividly illustrated in the instant

5 PA 1939, No 133, amending §§ 4 and 6 of PA 1929, No 137, and adding §§ 6a through 6e.

case.  Of the 138 lots in the five subdivisions at the time of the election, there were 28 summer and 12 permanent residences, and the remainder of the lot owners (approximately 75% in the five subdivisions) owned only vacant, unimproved lots.  Only 23 area freeholders were determined to be eligible to vote out of the more than 120 lot owners within the five subdivisions.  The owners of the 12 permanent homes constituted a majority of those determined eligible to vote.  Eighteen of those persons who were eligible voted to include all lot owners within the Association.  Therefore, if the election were valid, by a vote of approximately 15% of the total number of lot owners within the territory, the Association was converted from a voluntary association to a largely involuntary one, and the overwhelming majority of persons owning lots within the subdivisions were forced, without their consent, to come under the jurisdiction of the Association.

Before turning to discussion of the meaning and constitutionality of the weekend residency requirement, we note that the entire act borders on unconstitutionality by reason of its vagueness.  This is so primarily because several of its basic terms—"resided weekends", "summer resort", "resort community", "summer resort owners"—are neither explicitly nor implicitly defined by any provisions of the act.[6]  However, because of the presumption of

---

[6] The need for clarification of the term "resort" is demonstrated by the definition of that term in Webster's Third New International Dictionary:

"1 a:  something to which or someone to whom one looks for help:  a source of aid or refuge:  RESOURCE, EXPEDIENT b:  an act of going to or making application (as in seeking aid):  RECOURSE 2 a:  frequent, habitual or general going or repairing to or visiting b:  persons who frequent a place:  ASSEMBLAGE, COMPANY, THRONG c (1):  a place to which one betakes himself or persons go habitually:  a place of frequent assembly:  HAUNT (2):  a popular place of entertainment or recreation * * * ."

statutory validity, because the vagueness issue has not been squarely briefed and argued in this case, and because we are able to make a less sweeping disposition of this case, we do not now discuss the vagueness question.

The Court of Appeals in interpreting § 6c of the act determined that the term "resided" meant that "for purposes of qualifying for summer resort association elections under the statute here considered, the freeholder must have *owned* property in the 'territory to be affected' for four weekends in the month preceding the jurisdictional election." (Emphasis added.) (P 297.) This strained construction of the word "resided" renders portions of the section redundant and meaningless. We point out that the section of the act clearly intends more than ownership and indicates the necessity of bodily presence during weekends for the month prior to the election to qualify as an elector. In effect, by this construction the Court attempted to rewrite the statute for the legislature. This it had no authority to do. We cannot acquiesce in this error.

We have concluded it is necessary in disposing of this case to consider the constitutional questions dealing with the classification of freeholders under the equal protection clauses of the State and Federal Constitutions. We, therefore, discuss this question next.

This Court has previously discussed at length the principles governing such questions in the case of *Fox* v. *Employment Security Commission* (1967), 379 Mich 579, where we said (pp 588, 589):

"This Court has held numerous times that the Michigan Const 1908, art 2, § 1, secures the same right of equal protection as does its counterpart in the Constitution of the United States. *Gauthier* v. *Campbell, Wyant & Cannon Foundry Company*

[1960], 360 Mich 510, 514, and cases therein cited.
The same provisions in Const 1963, art 1, §§ 1 and
2, must likewise be held to afford the same rights as
the Federal equal protection clause.

"There is no doubt that state legislatures have a
broad range of discretion in establishing classifica-
tions in the exercise of their powers of regulation.
However, the constitutional guarantees of equal
protection are interposed against discriminations
that are entirely arbitrary. In determining what is
within legislative discretion and what is arbitrary,
regard must be had for the particular subject of
the state. legislation. There must be a relation be-
tween the classification and the purposes of the act
in which it is found. *Smith* v. *Cahoon, Sheriff*
[1931], 283 US 553, 566 (51 S Ct 582, 587; 75 L Ed
1264, 1274); *Morey* v. *Doud* [1957], 354 US 457, 465
(77 S Ct 1344, 1350; 1 L Ed 2d 1485, 1491); *Beauty
Built Construction Corporation* v. *City of Warren*
[1965], 375 Mich 229; *Palmer Park Theatre Com-
pany* v. *City of Highland Park* [1961], 362 Mich 326.

"In the case of *People* v. *Chapman* [1942], 301
Mich 584, a statute of this State was challenged as
unconstitutionally denying the defendant therein
equal protection of the laws. Justice STARR, writing
for the Court, stated (pp 597, 598):

" 'It is well recognized that the legislature may
make classifications of persons, provided such classi-
fications are based on substantial distinctions and
are in accord with the aims sought to be achieved.
(Citing cases.) However, such classification must
be neither arbitrary nor capricious, but must rest
on reasonable and justifiable foundations. In
*Haynes* v. *Lapeer Circuit Judge, supra* [(1918), 201
Mich 138], p 141, the rule is stated:

" ' "Legislation which, in carrying out a public
purpose for the common good, is limited by reason-
able and justifiable differentiation to a distinct type
or class of persons is not for that reason unconsti-
tutional because class legislation, if germane to the

object of the enactment and made uniform in its
operation upon all persons of the class to which it
naturally applies; but if it fails to include and affect
alike all persons of the same class, and extends im-
munities or privileges to one portion and denies
them to others of like kind, by unreasonable or arbi-
trary subclassification, it comes within the constitu-
tional prohibition against class legislation." '

"See, also, *Davidow* v. *Wadsworth Manfg. Co.*
[1920], 211 Mich 90, 97–102; *Peninsular Stove Co.*
v. *Burton* [1922], 220 Mich 284, 286; *Smith* v. *Wayne
Probate Judge* [1925], 231 Mich 409."

The explicit intention of the legislature in enact-
ing the summer resort owners corporation act was
to permit ten or more freeholders to incorporate
for the better welfare of a community and for the
purchase and improvement of lands to be occupied
for summer homes and summer resort purposes, to
exercise certain police powers over the lands owned
by said corporation and within its jurisdiction, and
to provide penalties for the violation of the bylaws
established under police powers. In short, it was
to provide benefits for all freeholders in the par-
ticular summer resort area.

The general validity of a reasonable period of
residence in a community as a qualification for the
exercise of one's franchise therein is beyond ques-
tion. *Carrington* v. *Rash* (1965), 380 US 89 (85
S Ct 775, 13 L Ed 2d 675); *Pope* v. *Williams* (1904),
193 US 621 (24 S Ct 573, 48 L Ed 817); see, also,
Mich Const 1963, art 2, § 1, as implemented by PA
1963 (2d Ex Sess), No 3, § 10 (MCLA § 168.10 [Stat
Ann 1970 Cum Supp § 6.1010]). And since corpo-
rations authorized by the statute in question clearly
possess many quasi-governmental characteristics,
it is appropriate that the constitutional principles
governing voter qualifications for similar local elec-
tions be generally applicable to elections conducted

under § 6 of the act.  Accordingly, the weekend
residency requirement of § 6c would appear to be
less stringent than the parallel requirements for
most other local elections if it were considered with-
out regard to the peculiar type of community (re-
sort) envisioned by the act and without regard to
the peculiar type of residency (bodily presence)
required by the act.

But we cannot ignore these distinctions.  In con-
trast to the usual local election situation, we deal
here with residency *away* from the permanent dom-
iciles of many potential voters, and we deal with
the harsh requirement of "bodily presence" in the
community.  The facts giving rise to the present
controversy make it abundantly clear that in the
case of an election held in a resort area, many po-
tential voters—whose interests will be vitally af-
fected by the election results—cannot *reasonably* be
expected to meet the weekend residency requirement
of § 6c.[7]  As a result, contrary to the object of the
legislation, which is to benefit all freeholders in an
affected resort area, the residency requirement of
§ 6c has the practical effect of splitting, for election
purposes, the natural class of area freeholders into
two differently treated subclasses: those who are
more or less permanent residents of the area and
those who occasionally use their resort property.

It is to be emphasized that the phrase "resided
weekends" is not defined in the act.  Does it mean

---

[7] It is to be emphasized that the equal protection test is not
whether the party claiming unlawful discrimination could possibly
have met the questioned requirement, but whether he could *reason-
ably* be expected to do so consistent with the object of the legisla-
tion.  The United States Supreme Court clarified this distinction in
*Kramer* v. *Union Free School District* (1969), 395 US 621 (89 S Ct
1886, 23 L Ed 2d 583), wherein it held that a childless stockbroker
who resided in his parents' home was denied equal protection by
voter qualification legislation requiring voters at school district meet-
ings to be owners (or lessees) of taxable realty, or parents (or
guardians) of school children.

from Friday night to Monday morning? Does it mean one day, one hour, or even one minute? Whatever it means, the weekend residency requirement bears no reasonable relationship to the legislative purpose for which the act was adopted.

We hold that the residency requirement of § 6c was from the beginning, and is now, constitutionally invalid, since it constitutes a denial to the plaintiffs and others like them of equal protection of the laws under the Michigan and United States Constitutions. It grants privileges and benefits to a portion of the class of freeholders while denying them to the remaining class of freeholders.

We further hold that the election held was invalid and that the Association cannot exercise any jurisdiction over plaintiffs and other similarly situated freeholders at least until all affected freeholders are given an opportunity to speak at the ballot box or until they have voluntarily executed grants of authority pursuant to § 7 of the act.[8]

The residency requirement in question is severable from the remainder of the statute, and the remainder is in itself a complete act. See MCLA § 8.5 (Stat Ann 1969 Rev § 2.216).[9]

Answering plaintiffs' trial court issues (a), (b), (c) and (d), we hold that North Shore Estates Association has not lost its legal corporate status and has operated for purposes consistent with the statute as to those freeholders only who have exe-

_____

[8] MCLA § 455.207 (Stat Ann 1963 Rev § 21.757).—REPORTER.

[9] "Sec. 5.  In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:

"If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable."

cuted grants of authority in accordance with § 7 of the statute.

Concerning plaintiffs' trial court issue (g), since the North Shore Estates Association never acquired jurisdiction over lots 1 through 35 of North Shore Estates subdivision, the question of whether the incorporation of the City of Ferrysburg removed said lots becomes moot.

We reverse the Court of Appeals and the trial court and remand the cause to the trial court for entry of a judgment pursuant to this opinion.

Plaintiffs shall have costs.

T. E. BRENNAN, C. J., and KELLY, BLACK, ADAMS, and T. G. KAVANAGH, JJ., concurred with T. M. KAVANAGH, J.

DETHMERS, J., concurred in the result.