# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES MCGUE and TRACY MCGUE,

        Plaintiffs-Counter-
        Defendants/Appellants,

v

GLENBROOK BEACH ASSOCIATION,

        Defendant-Counter-
        Plaintiff/Appellee,

and

CHRIS DONAJKOWSKI, JOSEPH KELLY,
CHARLES MORTON, JOHN REIGGER, PAUL
STAHL, ROBERT VON BERGE, and DARREL
WETZEL,

        Defendants-Appellees

UNPUBLISHED
March 6, 2018

No. 337785
Washtenaw Circuit Court
LC No. 16-000239-CZ

Before: CAVANAGH, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

This appeal arises from the efforts of plaintiffs, James and Tracy McGue, to compel defendants, Glennbrook Beach Association and the members of its board of trustees, to repair the allegedly inadequate and dangerous roadway that runs through property owned by Glennbrook[1] Beach Association and managed through its board. Plaintiffs appeal the trial court's order denying their motion for partial summary disposition as to standing, and granting defendants' cross-motion for partial summary disposition as to standing and their second motion for summary disposition pursuant to MCR 2.116(C)(10). While we agree in part with plaintiffs' standing arguments, we affirm the trial court's grant of summary disposition to defendants pursuant to MCR 2.116(C)(10).

---

[1] The association's name appears in the record as "Glenbrook" and "Glennbrook." The articles of incorporation and bylaws use "Glennbrook,"

## I. RELEVANT FACTS AND PROCEEDINGS

Plaintiffs are owners[2] of property in a subdivision located on Half Moon Lake in Washtenaw County. In 1947, the subdivision was incorporated under the Michigan Summer Resort Owners Corporation Act, MCL 455.201 *et seq*., as Glennbrook Beach Association (hereafter, "the association"). According to its bylaws, the association is a "quasi-municipal body authorized by law to buy, improve, sell and lease lands; to exercise certain police powers over the land owned by the Association and land within its jurisdiction, and to provide penalties for the violation of bylaws established under police powers."

According to James McGue, the association's roads are substandard and dangerous. He brought this to the attention of the association and its trustees, but they did not act on his requests. Consequently, he and his wife, Tracy, filed a complaint, which they amended in June 2016, to include three counts. The first count was a breach of contract claim arising from the association's alleged failure to provide for the care and maintenance of its roads as set forth in the association's articles of incorporation, bylaws, and "Routine Annual and Periodic Duties" (hereafter, "the RAPD"). The second count was a claim that the association failed in its obligation to comply with applicable Dexter Township road ordinances, specifically Ordinances 21 and 34. The third count alleged that the individual trustees had breached the duties owed to plaintiffs under Michigan's Business Corporation Act (hereafter, "the BCA"), MCL 450.1101 *et seq*. Plaintiffs asked the trial court for a declaratory judgment enforcing their rights under the articles of incorporation, the bylaws, the RAPD, the applicable Dexter Township Ordinances, and the BCA, and injunctive relief as necessary to preserve these rights.

In July 2016, the association filed a counterclaim alleging that plaintiffs may not have standing to bring a lawsuit. The association surmised that plaintiffs were not members of the association because neither they nor their predecessors in interest had granted the association jurisdiction over their property, as required by MCL 455.207,[3] and the legal effect of the association members' 1971 annexation vote was questionable. Accordingly, the association asked the trial court to render a declaratory judgment as to whether plaintiffs' property was subject to the jurisdiction of the association. If the trial court determined that it was, the association asked the court to declare that plaintiffs, as the owners of the property, were also subject to the association's articles of incorporation and bylaws, and to require plaintiffs to execute a grant of jurisdiction in accordance with MCL 455.207.

Plaintiffs filed an answer and affirmative defenses to the counterclaim, stating in relevant part that they had explicitly subjected their property to the jurisdiction of the association by means of written correspondence, payment of dues that the association had accepted, and a

---

[2] James McGue owns the property according to the warranty deed. The nature of Tracy McGue's current ownership interest is unclear, but immaterial to disposition of this matter.

[3] MCL 455.207 requires members admitted to an incorporation of summer resort owners to file with the secretary of the corporation a writing that meets requirements set forth in the statute and that grants jurisdiction over their property to the corporation.

stipulation on the record in the instant lawsuit. Prior to filing their answer, plaintiffs had moved to extend discovery beyond the scheduled cut-off date of August 18, 2016. Defendants opposed the motion, alleging that plaintiffs lacked standing to pursue any of their claims. After hearing oral argument, the trial court granted plaintiffs' request for more time, but limited their discovery to six depositions "restricted to the issues of their standing to proceed with any of the claims in the First Amended Complaint.

In December 2016, plaintiffs moved for partial summary disposition on the issue of standing, raising essentially the same arguments that they raise on appeal. Defendants responded in a January 4, 2017 brief and cross-motion for partial summary disposition on standing pursuant to MCR 2.116(I)(2) (opposing party entitled to judgment). Prior to this response, defendants had filed a "second motion" for summary disposition of plaintiffs' claims under MCR 2.116(C)(10) for reasons essentially the same as those articulated on appeal. Plaintiffs responded on February 2, 2017, and the trial court heard oral argument on the motions and cross-motion on February 8, 2017.

The parties' arguments regarding standing were consistent with those offered on appeal and discussed below. With respect to their motion for summary disposition pursuant to MCR 2.116(C)(10), defendants argued in essence that ordering the association to comply with plaintiffs' request for relief would put the association in an impossible position. Plaintiffs' expert surmised that the repairs necessary to bring the association's roads into compliance with the Dexter Township road ordinances would cost approximately $600,000. As a summer resort, the association is governed by particular statutes, one of which—MCL 455.219[4]—prohibits the board from collecting annual dues or levying special assessments without a majority vote of all its members. Likewise, the association cannot raise funds by selling any of its property without authorization by a majority vote of the members voting at the annual meeting or at a special

---

[4] MCL 455.219 provides in relevant part:

> (1) The board of trustees may require that the members of a corporation pay annual dues and special assessments for any purpose authorized under this act. All of the following apply to an assessment of annual dues or a special assessment under this subsection:
>
> (a) The approval of the members under subsection (2) is required.
>
> * * *
>
> (2) Unless the members by a vote of a majority of all of the members have by resolution specifically provided for approval by a majority of the votes cast by the members voting, the vote of a majority of all of the members of the corporation is required to approve an action of the board under subsection (1).

According to defendants' counsel, the association had not incorporated a provision into its bylaws allowing for "approval by a majority of votes cast by the members voting."

meeting. MCL 455.205. In addition, the relevant ordinances called for roads at least 66 feet wide; however, none of the association's roads are 66 feet wide. Therefore, compliance with that standard would require the condemnation of property, but the association cannot condemn property without a majority vote of its members. Defendants argued that by asking the trial court to allow them to enforce an alleged contract between the association and its members where a majority of the members had not voted to spend the money, plaintiffs were essentially asking the trial court to ignore the relevant statutes and to give them a veto over the will of the majority.

For the reasons stated on the record by defendants' counsel, the trial court granted defendants' cross-motion for partial summary disposition as to standing and defendants' second motion for summary disposition, and denied plaintiffs' motion for summary disposition. The trial court issued a corresponding order submitted under the 7-day rule. After the trial court issued its ruling, plaintiffs signed a grant of authority in accordance with MCL 455.207. Subsequently, the trial court issued a final stipulated order dismissing defendants' counterclaim.

## II. ANALYSIS

### A. STANDING

Plaintiffs first contend that they have standing to bring a breach of contract claim because they are members of the Glennbrook Beach Association, and the association's bylaws constitute a contract with its members. We agree. They also claim that they have standing to bring a claim under the BCA because it applies to summer resorts. Again, we agree. Finally, plaintiffs claim that they have standing to enforce the Dexter Township road ordinances against the association because they have a substantial interest in the subject of enforcement that is not common to all citizens. We disagree. "Whether a party has standing is a question of law subject to review de novo." *Groves v Dep't of Corrections*, 295 Mich App 1, 4; 811 NW2d 563 (2011). Also subject to review de novo is a circuit court's summary disposition decision. *Lockport Twp v City of Three Rivers*, 319 Mich App 516, 519; 902 NW2d 430 (2017). In a motion for summary disposition brought under MCR 2.116(C)(10), the moving party has the initial burden of supporting its position by documentary evidence. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). However, if it appears from the evidence presented that the nonmoving party is entitled to summary judgment, the trial court may render judgment for that party. MCR 2.116(I)(2).

### 1. CONTRACT AND BCA CLAIMS

Plaintiffs first contend that the trial court erred in granting defendants' cross-motion for summary disposition on the issue of standing. The pivotal question is whether plaintiffs are members of the association. Plaintiffs argue that they have standing to bring their claims because they are members of the association and subject to its jurisdiction by virtue of their warranty deed and the association's bylaws. Defendants argued below[5] that plaintiffs lacked

---

[5] Defendants observe on appeal that plaintiffs did not have standing to bring this lawsuit, while simultaneously conceding that, to the extent that the circuit court granted them summary

standing to bring a claim because they were not members of the association since neither they nor their predecessors in interest had ever voluntarily executed the document required by MCL 455.207 to convey jurisdiction over the property to the association. In our view, plaintiffs have the better argument.

The warranty deed for plaintiffs' property states that the buyer of the property takes the property subject to the bylaws of the association. Article I, section 1, of the 2006 bylaws, which no one contests were in effect when James McGue purchased the property, states that any person or entity "holding title to a cottage or home in Glennbrook Beach Subdivision (Supervisor's Plat No 2 of Dexter Township, Washtenaw Public Records) and certain adjoining lots is/are regular members of the Association." Thus, according to the bylaws, McGue was a regular member of the association simply by virtue of his holding title to the property.

Plaintiffs' warranty deed also states that the buyer took possession of the property subject to the jurisdiction of the association as set forth in Liber 1365, page 86, which referred to a 1971 annexation vote. Defendants questioned whether this provision of the warranty deed was legally sufficient to grant the association jurisdiction over the property because Michigan's Supreme Court had declared the annexation voting provisions of MCL 455.206 unconstitutional in *Baldwin v North Shore Estates Ass'n*, 384 Mich 42; 179 NW2d 398 (1970). However, defendants' reliance on *Baldwin* is insufficient to support the trial court's grant of summary disposition to defendants on the issue of standing.

The summer resort owners corporation act provides two ways for a summer resort incorporated under the act to obtain "the right to exercise all jurisdiction, conferred by [the] act, over the lands owned by members of [the] corporation . . . ." *Whitman v Lake Diane Corp*, 267 Mich App 176, 177; 704 NW2d 468 (2005), quoting MCL 455.207. First, the act requires property owners who become members of the corporation to execute grants of authority that allow the corporation to exercise jurisdiction. MCL 455.207. Second, after two years of continuous operation "within 'the territory to be affected,' the corporation may call for an election to determine whether the "entire territory" comprising the resort community "should become entirely incorporated." *Id*. at 178, quoting MCL 455.206.

What the *Baldwin* Court held constitutionally invalid was the residency requirement in MCL 455.206c[6] according to which freeholders had to be physically present at their area

_____

disposition based on plaintiffs' alleged lack of membership in the association, this no longer is a proper reason to affirm the circuit court's order. Defendants base their position on the signed grant of authority plaintiffs executed after the trial court had summarily dismissed its claim, which apparently provided grounds for the stipulated dismissal of defendants' counterclaim.

[6] MCL 455.206c provides:

> For the purpose of such election all freeholders who have resided week-ends in the territory to be affected for a period 1 month prior to such election and who are qualified voters in any voting precinct of the state of Michigan at general elections, are qualified voters for the purpose of this act.

properties the four weekends preceding an election in order to be eligible to vote in the election. *Baldwin*, 384 Mich at 53-54. Seventy-five percent of the lots in North Shore Estates were vacant, 23 of 120 lot owners were eligible to vote, and 12 of those eligible to vote were permanent residents of the resort area. *Id*. at 49. Not only did a mere 15% of the lot owners determine that all of the lot owners would be included in the North Shore Estates Association, *id*., but the practical effect of the election residency requirement was to split, "for election purposes, the natural class of area freeholders into two differently treated subclasses," *id*., at 53. Thus, the residency requirement deprived a majority of lot owners the opportunity to vote in an election whose results would vitally affect their interests. The *Baldwin* Court held that the election was invalid and that the North Shore Estates Association could not "exercise any jurisdiction over plaintiffs and other similarly situated freeholders at least until all affected freeholders are given an opportunity to speak at the ballot box or until they have voluntarily executed grants of authority pursuant to [MCL 455.207] of the act."[7] *Id*. at 54.

Defendants implied in their counterclaim that the association's 1971-annexation election suffered the same infirmities as the election invalidated by the *Baldwin* Court. However, this assumption is unsupported by the record. Liber 1385, page 86, indicates that notice of registration and election was mailed or delivered to each member and lot owner in the association and published in the Chelsea Standard newspaper. There were three registration periods scheduled during the months of June and July, when summer resort owners might reasonably be expected to visit their resort property, and the election was held in July. Given that the association conducted its annexation election after the *Baldwin* decision, and considering the absence of any mention of a residency requirement placed on voter eligibility, one might reasonably infer that the association conducted its election so as to give every freeholder the opportunity to vote, thus avoiding the constitutional infirmity recognized by the *Baldwin* Court.

To the extent that plaintiffs are members of the association by virtue of the provisions in the warranty deed, they have standing to assert a breach of contract claim. When "adopted in conformity with state law," an entity's bylaws or similar governing documents constitute a binding contract between the entity and its members. *Allied Supermarkets, Inc*, 45 Mich App 310, 315; 206 NW2d 490 (1973). In the present case, because there is no dispute about the validity of the association's articles of incorporation and bylaws, they constitute a binding contract, and the law provides a cause of action for breach of a contract.

In light of the foregoing, we conclude that the trial court erred in granting defendants' cross-motion for summary disposition on the issue of standing to bring a breach of contract claim. Plaintiffs presented evidence of standing by virtue of the terms of their warranty deed and evidence of the association's 1971 annexation election. Defendants presented no evidence or argument establishing that the 1971 election violated the ruling in *Baldwin* and entitled them to summary disposition as a matter of law. Further, to the extent that defendants challenge

---

[7] In 2006, this Court deemed MCL 455.206c unconstitutional for vagueness and concluded that any vote taken in accordance with its provisions violated a property interest protected by constitutional guarantees of due process. *Whitman*, 267 Mich App at 183.

plaintiffs' standing to bring a claim under the BCA on the ground that they are not members of the association, this challenge also fails for the reasons stated above.

## 2. ENFORCEMENT OF DEXTER TOWNSHIP ORDINANCES CLAIM

Plaintiffs also contend that they have standing to enforce the Dexter Township road ordinances against the association. They contend that *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2010) (*LSEA*), is dispositive on the issue of standing and compels a decision in their favor. We disagree.

At issue in *LSEA* was "whether teachers have standing to sue the school board for failing to comply with its statutory duty to expel students that have allegedly physically assaulted those teachers." *LSEA*, 487 Mich at 352. In *LSEA*, Michigan's Supreme Court explained the proper approach to standing as follows:

> [A] litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*LSEA*, 487 Mich at 372.]

The Supreme Court determined that the text of the statute at issue, MCL 380.1311a(1),[8] and the statute's legislative history, indicated that the plaintiff-teachers had a substantial and distinct interest in its enforcement. *LSEA*, 487 Mich at 374. The statute provided for the expulsion of students who assaulted school employees and volunteers in particular, not those who assaulted the citizenry at large, and the statute's legislative history showed that its purpose was "to create a safer school environment and, even more specifically, a safer and more effective working environment for teachers." *Id*. In light of this, and considering affidavits of the plaintiff-teachers, the Supreme Court concluded that "teachers who work in a public school have a significant interest distinct from that of the general public in the enforcement of MCL 380.1311a(1). *Id*. at 376.

---

[8] MCL 380.1311a(1) provided in relevant part:

> [I]f a pupil enrolled in grade 6 or above commits a physical assault at school against a person employed by or engaged as a volunteer or contractor by the school board and the physical assault is reported to the school board, school district superintendent, or building principal by the victim or, if the victim is unable to report the assault, by another person on the victim's behalf, then the school board, or the designee of the school board . . . shall expel the pupil from the school district . . . .

Plaintiffs contend that, as members of the association who must routinely access their property over the association's allegedly inadequate and dangerous roads, they have a substantial interest in the enforcement of the relevant Dexter Township road ordinances "that will be detrimentally affected in a manner different from the citizenry at large" if the ordinances are not enforced against defendants. Just as the plaintiff-teachers in *LSEA* had standing because MCL 380.1311a(1) was for their benefit, not for the benefit of members of the general public, plaintiffs claim that they have standing because the association exists for their benefit and the benefit of its other members, not for members of the general public, who might never drive the association's roads. Thus, plaintiffs conclude that as members of the association, they " 'have a substantial interest in the enforcement of [the Dexter Ordinances against the association] distinct from the general public.' "

While the association may exist for plaintiffs' benefit, the Dexter Township road ordinances at issue do not exist for plaintiffs' benefit in the same way that MCL 380.1311a(1) exists for the benefit of the plaintiff-teachers in *LSEA*. The purposes of Ordinance 21, the ordinance plaintiffs rely on primarily, include:

> TO REGULATE THE CONSTRUCTION, MAINTENANCE AND USE OF PUBLIC AND PRIVATE ROADS WITHIN DEXTER TOWNSHIP, THE USE THEREOF BY TRAFFIC, THE ADMINISTRATION AND ENFORCEMENT COSTS INCIDENT THERETO, AND TO INSURE THAT ALL RESIDENCES AND BUILDINGS WITHIN THE TOWNSHIP OF DEXTER MAY BE ACCESSIBLE TO EMERGENCY, POLICE AND FIRE PROTECTION, AND TO AMEND THE EXISTING DEXTER TOWNSHIP PRIVATE ROAD ORDINANCE, ORDINANCE 11, AND FOR OTHER PURPOSES AS FOLLOWS [IN THE BODY OF THE ORDINANCE].

Thus, unlike MCL 380.1311a(1), the text of which states that it exists to benefit the safety and effectiveness of public school employees and volunteers, including teachers, nothing in the text of Ordinance 21 suggests that plaintiffs' interest in roads constructed according to its provisions is distinct from that of anyone else who drives on the association's roads. Whereas MCL 380.1311a(1) arguably would *not* benefit a member of the general public assaulted by a student while visiting the school, Ordinance 21 would benefit equally everyone who drove on the association's roads, regardless of whether they were members of the association or not. Therefore, when it comes to compelling the association to comply with the Dexter Township road ordinances, plaintiffs do not have a "substantial interest, that will be detrimentally affected in a manner different from the citizenry at large."[9] *LSEA*, 487 Mich at 372.

---

[9] Plaintiffs also rely on *Schall v City of Williamston*, unpublished per curiam opinion of the Court of Appeals, issued December 4, 2014 (Docket No. 317731), a case that is not binding on this Court. MCL 7.215(C)(1). The plaintiffs in *Schall* sought injunctive relief to compel their neighbors, defendants D & G Equipment, Inc., and its owners, the Gustafsons, to comply with the City of Williamston's zoning ordinance. The ordinance allowed "the outdoor display of farm implements for sale only by special use permit," and to obtain a special use permit required

B. SUMMARY DISPOSITION UNDER MCR 2.116(C)(10)

Plaintiffs next contend that summary disposition was inappropriate because questions of fact remain as to each of plaintiffs' claims. We disagree. We review a circuit court's summary disposition decision de novo. *Lockport Twp*, 319 Mich App at 519.

1. STANDARD OF REVIEW

Defendants brought their second motion for summary disposition pursuant to MCR 2.116(C)(10). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. See *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto*, 451 Mich at 362. If the documentary evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, the trial court may grant the motion. *Id*.; MCR 2.116(C)(10), (G)(4). "[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *City of Detroit v Gen Motors Corp*, 233 Mich App 132, 139; 592 NW2d 732 (1998) (quotation marks and citation omitted).

2. BREACH OF CONTRACT CLAIM

---

creating "a green buffer zone to shield plaintiffs' property from the outdoor sales display on D&G's property." *Schall*, unpub op at 1. Finding that the defendants' use of their property violated the city's zoning ordinance and, therefore, was a nuisance per se, the circuit court "ordered the zoning administrator for the city to enforce the ordinance's buffering requirement." *Id*. at 1-2.

The defendants appealed, arguing in relevant part that the plaintiffs lacked standing and "failed to allege 'special damages' necessary for an actionable nuisance claim." *Id*. at 2. This Court found the defendants' standing argument to be without merit. *Id*. at 3. The Court observed that, as the abutting property owners whom the landscape buffer was designed to benefit, the "plaintiffs patently have a real interest in the subject matter of the controversy and outcome of litigation to ensure vigorous advocacy." *Id*., quoting *Bowie v Arder*, 441 Mich 23, 42; 490 NW2d 568 (1992). The Court further observed that, as abutting property owners whom the zoning provisions were designed to benefit, the plaintiffs had alleged " 'special damages not common to other property owners similarly situated.' " *Schall*, unpub op at 4, quoting *Village of Franklin v City of Southfield*, 101 Mich App 554, 557; 300 NW2d 634 (1980).

Unlike the plaintiffs in *Schall*, the instant plaintiffs have not alleged special damages unique to them. Plaintiffs' interest in having the association's roads meet the quality standards set forth in the Dexter Township road ordinances is no different from that of any other member of the association or, arguably, of anyone who drives on private roads located within the township.

Plaintiffs contend that through its articles of incorporation, bylaws, and the RAPD, the association has undertaken to perform certain duties relative to the care and maintenance of its roads, and that whether the association has fulfilled its obligations under these documents is a question of fact for the jury to decide.

Plaintiffs are correct that the association's articles of incorporation and bylaws make the association generally responsible for the care and maintenance of the roads over which it has control. Article III of the articles of incorporation enumerates six purposes for the formation of the association. Relevant among them is to "promote the comfort, health and general welfare of Glennbrook Beach Association," "to take over the care and maintenance of the . . . roads," to carry on the business necessary to effectuate the association's purposes, and to "protect and promote the health and welfare of the Glennbrook Beach Association." Article IV provides for a board of seven trustees to manage the association's affairs, and Bylaws III, section 6, authorizes the board to "exercise all of the powers of the Association," which includes "the management and control of the business and property of the Association." These provisions obligate the association to handle the care and maintenance of its roads through its board of trustees.

However, none of the aforementioned provisions in the association's governing documents obligates the association to any specific means of providing for the care and maintenance of the roads or establishes any specific quality standards. Plaintiffs contend that the RAPD provides the means, and that the Dexter Township road ordinances, Ordinance 21 in particular, provides the quality standards. Their position is unpersuasive.

Plaintiffs have presented no evidence indicating that the RAPD is part of the association's governing documents such that it would constitute a binding contractual agreement between the association and plaintiffs. The undated document is not referenced in the articles of incorporation or the bylaws, and plaintiffs have presented no evidence indicating when the document was produced or for what purpose. Moreover, it is plainly apparent from the text of the RAPD that the document's purpose was not to express the association's commitment to perform certain duties relative to the care and maintenance of its roads, but to provide an historical overview of the various issues the association has addressed over the course of its existence. For example, in a list of "Lake Issues," the document notes that stocking the lake with fish was something done "earlier in the Association," while issues involving Jet Skies have arisen "more recently." The RAPD also refers to "a lot of extra work generated over the years" relative to the collection of dues and to the first association picnic being held on June 17, 1949, and notes that vandalism and theft "have come up in the Association's history periodically but certainly not annually."

Given the context of the entire document, one can reasonably infer that activities listed under the "Roads" section of the RAPD—e.g., "sanding of icy roads," "scraping/grading of roads," and "snow removal from roads"—represent historical activities undertaken by the association to care for and maintain its roads. The list of activities under "Roads" also suggests that the association has acted to fulfill the obligations for the care and maintenance of the roads imposed by the articles of incorporation and bylaws. Further, given the nature of the RAPD as indicated by the language of its text, plaintiffs' implication that further discovery would reveal that the RAPD constitutes a binding contractual agreement between the association and its members seems speculative at best. As already indicated, conjecture and speculation do not

meet the burden of "providing evidentiary proof establishing a genuine issue of material fact." *City of Detroit*, 233 Mich App at 139 (quotation marks and citation omitted).

Moreover, nothing in the association's articles of incorporation or bylaws may be interpreted as a binding agreement between the association and its members obligating the association to maintain its roads in compliance with Dexter Township's road ordinances. Defendants claim exemption from compliance with the ordinances, while plaintiffs argue that defendants presented no evidence that the association's roads meet the conditions for exemption,[10] and even if they once did, that the association can no longer claim the exemption because the use of the roads and the number of houses on the roads has significantly increased. Regardless of whether the association's roads are exempt from compliance or not, no obligation for the association to maintain its roads in compliance with the Dexter Township ordinances arises from the association's articles of incorporation or bylaws. Therefore, any failure to provide for the care and maintenance of the roads to the standards set forth by the township's ordinances is not a ground for a breach of contract claim.

Further, "[t]he party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2013). In the present case, plaintiffs alleged in their complaint that defendants' failure to care for and maintain the roads resulted in difficulty accessing their property and damage to the facia of their Corvette. However, the record contains no evidence of any damages related to plaintiffs' alleged difficulty in accessing their property, or of the damage to their car, or of an estimate or bill for their car's repair. Failure to provide any evidence of their alleged damages, let alone to prove them with "reasonable certainty," constitutes another reason why plaintiffs cannot sustain their breach of contract claim against the association and the named trustees.

### 3. BCA CLAIMS

---

[10] Dexter Township Ordinance 21 provides for the following exemption:

> EXEMPTIONS: All improved private roads or access easements, serving more than one dwelling unit, which have been in existence as of the adoption of Dexter Township Ordinance No 11, January 4, 1977, are exempt from the application of this Ordinance, and shall be deemed to be in conformance with the standards of Section 5.02 of the Dexter Township Zoning Ordinance, as amended. Provided, however, that this exemption shall apply only to those parcels which have been improved with a principle building or structure and whose use is conforming to the terms of the Dexter Township Zoning Ordinance as of January 4, 1977 and maintained in conformance to said Zoning Ordinance continuously thereafter. All other parcels, lots, roadways, structures, buildings, and uses shall conform to the provisions of this Ordinance.

Plaintiffs assert that the trial court erred in dismissing their claim under the BCA. They contend that defendants' breach of the duties to maintain the roads imposed by its articles of incorporation and bylaws constitutes oppression under the BCA. We disagree.

Plaintiffs assert claims under MCL 450.1541a(1) and MCL 450.1489. Because plaintiffs do not address the merits of their claim under MCL 450.1541a(1), we deem abandoned the issue of whether the trial court erred by dismissing their claim under that statute. See *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999) ("[W]here a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court."). MCL 450.1489 allows a shareholder to bring an action in the circuit court "to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder." If a shareholder establishes grounds for relief, the statute gives the trial court broad discretion in granting the relief it deems appropriate.

Plaintiffs allege that defendants violated MCL 450.1489 by "breach[ing] their duties under the Articles of Incorporation, By-Laws, and the [RAPD], and applicable Dexter Township Ordinances, by failing and refusing to properly maintain the [association's] roads." They further allege that defendants "[f]ail[ed] to operate the [association] in good faith with ordinary care; and [p]laced their own interests ahead of those of Plaintiffs and the [association]." Presumably, these allegations pertain to the defendant-trustees. However, as previously indicated, although the association's articles of incorporation and bylaws obligate the association through its trustees to care for and maintain its roads, it does not obligate the association, or the board that exercises the association's powers, to provide what plaintiffs seek: roads that comply with the relevant Dexter Township ordinances. Plaintiffs have not presented evidence establishing a genuine issue of material fact that would allow their claim for breach of contract to go forward, and defendants are entitled to judgment as a matter of law because plaintiffs' evidence does not establish the contractual obligations they are trying to enforce. To the extent that plaintiffs base their claims under the BCA on defendants' alleged breach of contract, the trial court's dismissal of plaintiffs' BCA claims was also proper.

Finally, plaintiffs requested declaratory judgments enforcing their rights under the articles of incorporation, bylaws, the RAPD, the applicable Dexter Township ordinances, and the BCA. However, plaintiffs have not shown that these documents entitled them to the specific rights they claim.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering