O. J. Schmidt, Appellant, v. Henry H. Twedt et al., Appellees.

No. 42553.

November 20, 1934.

Rehearing Denied March 8, 1935.

Martin & Alexander, for appellant.

Burnstedt & Hemingway, for appellees.

Evans, J.—The trial court filed a finding of facts. We can make no better statement of the case than to set forth such finding of facts. It was as follows:

"Defendant Henry H. Twedt has been the owner of the 160-acre farm involved in this controversy for a long period of years. Sometime in or about the year 1925, however, being hard pressed by his creditors, and fearful that they would take his farm, he gave to

his brother Sam Twedt a pretended deed conveying title thereto to the brother, and at the same time entered into the pretended written agreement for its repurchase appearing in this record as Exhibit K. The conveyance and the agreement were both fraudulent, and made for the purpose only of defeating and defrauding Henry's creditors. So far as the present record shows the brother Sam has never claimed either dominion or ownership of the farm from that day to this. The defendant has never paid any rent. On the contrary the farm has during all the intervening years been treated and considered, and by the understanding of all parties has been in fact, the property of the defendant Henry Twedt, and the purported record conveyance thereof to Sam and the contract Exhibit K were a sham only, made and intended for the purpose of defrauding and misleading creditors as aforesaid.

"Some time in the spring of 1932, the defendant Henry Twedt was in default on a mortgage covering said farm, held by the Mutual Benefit Life Insurance Company, and was apprehensive of a foreclosure and receivership. At that juncture the plaintiff Schmidt and the brother Sam procured from the defendant the execution of the lease and rent notes in suit. They suggested to the defendant that in case of foreclosure a receiver would certainly be applied for, and the possession of the land would thus immediately be taken out of the defendant's hands. They represented that plaintiff Schmidt was an expert in such quandries, and could save defendant in the possession of the farm during the foreclosure proceeding and the year of redemption; and with that end in view, and for the purpose only of defeating the mortgagee's right to a receiver under its mortgage, the plan was conceived and the pretension was carried out of executing the lease in suit, covering defendant's own farm, but leased in the name of the fraudulent record owner Sam Twedt; and thereupon they pretended to assign the lease and collateral rent notes to this plaintiff, before the mortgagee could set in motion its threatened foreclosure proceeding. Such is the inception of the lease in suit in this case.

"The evidence shows, therefore, and I find the fact to be, that the lease and rent notes which are the subject of the present suit, are in truth and in fact, as were the deed and contract Exhibit K above referred to, a mere pretense, and a sham and a fraud on Henry's creditors, particularly the mortgagee aforesaid, entered into for the sole purpose of defeating said mortgagee of its right to

a receiver in the proposed foreclosure proceeding,—which was in fact shortly thereafter brought.

"This situation was testified to in detail by the defendant Henry Twedt, and to all intents and purposes stands undenied of record. Sam Twedt was conspicuous at this hearing by his absence. Plaintiff was a witness in the case, to be sure, but except for denying by yes and no answers certain statements ascribed to him by the defendant, he does not undertake in any sense whatever either to deny the facts above stated, or to explain them.

"I am well satisfied that the history of these transactions as thus related by the defendant is true. While he is of course a self confessed defrauder, and apparently rather proud of it in the bargain, still I carefully watched his testimony and closely measured his capacity on the witness stand, and concluded that his testimony was true and remained unshaken throughout. As already said, it is practically undenied from any source. I infer that however dull the defendant's moral scruples may be, he is readily influenced by others. He not only executed the lease in suit, covering the farm of which he himself was the owner, but he had a series of other transactions with plaintiff, including the taking out of a $5,000 life insurance policy with an annual premium of nearly $250. Such transactions between a hopeless insolvent and a total stranger who casually appears on the horizon, call for some detailed explanation, it seems to me, on plaintiff's part.

"Upon the foregoing findings the conclusions of law are quite inevitable. The court cannot afford to make itself a party to or lend its aid in such a transaction. The two parties are in *pari delicto;* the court will necessarily leave them where it finds them. As said by the supreme court in Barth v. Severson, 191 Iowa 780, 183 N. W. 617, in a very similar situation, 'It is a rule too elementary to require citation of authority to support it that, where parties have participated in a fraudulent act, a court of equity will leave the parties where it finds them.' The Restatement of the Law of Contracts (Sec. 577 ) puts it this way: 'A bargain performance of which would tend to harm third persons by deceiving them as to material facts, or by defrauding them, or without justification by other means, is illegal.' And the comment thereunder says, 'If the purpose to defraud is intended by one, only the other party can recover for a breach of the contract. If the improper purpose is intended by both parties to the contract, neither can recover'."

 The foregoing finding of facts by the trial court renders its conclusions inevitable. All the evidence received on behalf of the defendant was appropriately objected to in detail, and such objections were renewed by appropriate objections at the close of the evidence. The grounds of the objections and motion, stated broadly, were:

(1) That the evidence in support of the defense was in parol, and tended to vary and contradict the written contract; (2) that the answer and the evidence in support thereof amounted to a denial by the defendant of the title of his landlord as it appeared from the lease signed by both of them.

 The points thus strenuously urged by the plaintiff might be quite tenable were it not for the issue of fraud. The parol evidence rule is not an obstacle to the proof of fraud in obtaining a contract. Such proof does not in a legal sense vary or contradict the written contract. The issue does not turn upon the terms of the contract, but upon the method of its procurement. The same is to be said as to the rule that forbids the tenant to deny the title of his landlord. A contract, good and valid on its face, is yet vulnerable to a charge of fraud in its obtaining. To establish fraud in such a case, it is not essential that issue shall be made upon the contents of the contract. The finding of facts by the court is strongly supported by the record.

 The appellant urges that the fraud charged by the defendant was not actionable. There is a sense in which that is true. The court found that both parties participated in the fraud and that neither could recover thereunder. It dismissed the plaintiff's action and the defendant's counterclaim. This was a holding that the fraud was not actionable in favor of either party. The court left both parties where it found them. This is the recognized rule where the parties are in *pari delicto*.

The judgment was right, and is accordingly affirmed.

Mitchell, C. J., and Evans, Stevens, and Kindig, JJ., concur.