**Jessie M. SCHROEDER, Individually and on behalf of others similarly situated, Plaintiff,**

v.

**DAYTON–HUDSON CORPORATION, a Foreign Corporation, doing business in Michigan under the assumed name, J. L. Hudson Company, Defendant.**

Civ. No. 75–71935.

United States District Court,
E. D. Michigan, S. D.

Aug. 19, 1977.

Rehearing Granted In Part
June 30, 1978.

David Melkus, Flint, Mich., for plaintiff.

Timothy K. Carroll, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendant.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

CORNELIA G. KENNEDY, District Judge.

This action was brought by Jessie M. Schroeder against Dayton-Hudson Corporation alleging jurisdiction on the basis of certain federal statutory rights as well as diversity of citizenship. The plaintiff is a Michigan citizen, while the defendant is a foreign corporation with its principal place of business in a state other than Michigan which does business in Michigan under the

name J. L. Hudson Company. The complaint alleges that she began employment with J. L. Hudson Co. in 1947, and continued to work there until late 1972. J. L. Hudson was acquired by Dayton-Hudson in 1971.

Plaintiff's relationship with her employer was apparently satisfactory to both employer and employee until 1971. During the period of 1947 to 1971, the plaintiff rose from her entry level position as a salesperson to the executive position of Corporate Training Director. She attained this position in 1958, and remained at that level until she was separated from the company on October 17, 1972.

According to the complaint, during 1971, the new management engaged in certain activity designed to force plaintiff's resignation, including false accusations of poor performance and intrastaff relationships and false charges of failure to meet departmental objectives. These undeserved denunciations, she alleges, eventually caused her to develop physical and emotional problems which required hospitalization and treatment. In the fall of 1972 Mrs. Schroeder returned to her job, but on October 17, 1972, she was told that she could no longer continue in her job and would have to accept proffered termination terms under which she would receive a portion of her salary until she became 60 years of age, at which time she would be placed on early retirement.

It is the plaintiff's position that she properly performed all duties of her job. She claims that she was fired because of the policies of the new management and that these policies constituted age and/or sex discrimination in violation of the Fourteenth Amendment; the federal Fair Labor Standards Act, 29 U.S.C. § 206(d); the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.; 5 U.S.C. § 7151; 42 U.S.C. §§ 1981, 1985; the Michigan Constitution of 1963, Article I, Section 2; the Michigan Fair Employment Practices Act,

M.C.L.A. §§ 423.301, .303a, M.S.A. §§ 17.-458(1), .458(3a); the Minimum Wage Law of 1964, M.C.L.A. §§ 408.397, 750.556, M.S.A. §§ 17.255(17), 28.824; and the common law and public policy of the State of Michigan. The plaintiff urges the Court to take jurisdiction over the state law claims on the basis of pendent jurisdiction, as well as diversity jurisdiction, and that the Court certify this as a class action.

The plaintiff has also included three other grounds for relief in her complaint: breach of contract, wrongful discharge, and intentional infliction of emotional distress.

This case is now before the Court on the defendant's motion to dismiss.[1]

The statute of limitations issue is critical to several aspects of plaintiff's claims and will be discussed first.

If the statute of limitations began to run at the time at which the plaintiff was removed from her job, October 17, 1972, many of the grounds for recovery upon which the plaintiff relies would be unavailable either because the statute of limitations has run or because the plaintiff failed to pursue her administrative remedies in a timely manner. The plaintiff contends that the statute of limitations defense is inapplicable, that the defendant's violations were and are of a continuing nature and that the action is, therefore, timely brought. The defendant asserts that the statute of limitations began to run on October 17, 1972 and that the same date begins the period during which administrative remedies had to be pursued.

As support for this continuing violation theory, plaintiff relies upon *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) and *Evans v. United Air Lines*, 534 F.2d 1247 (7th Cir. 1976), rev'd, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). In *Franks*, a Title VII case, the Supreme Court held that it was appropriate to award seniority to black applicants hired pursuant to court order as

---

1. In her response to defendant's motion to dismiss, the plaintiff stipulated to the dismissal of the claims based upon the Fourteenth Amendment, U.S.Const. amend. XIV, and § 1981, 42 U.S.C. § 1981. Those claims are hereby dismissed pursuant to that stipulation.

over the road (OTR) truck drivers from the date that they applied for employment at Bowman Transportation Company. The beneficiaries of the Supreme Court's holding in *Franks* were the members of a class (class 3) composed of black applicants that had applied for an OTR driving position between the beginning of 1970 and January 1, 1972. 424 U.S. at 751, 758 n. 10, 96 S.Ct. 1251. However, the Supreme Court, in *Franks*, was not concerned with defining a continuing violation or statute of limitations problem since the intervening plaintiff that represented class 3 had filed a complaint with the EEOC in a timely manner after having been refused a job at Bowman Transportation and all members of the class had applied after the date the complaint of the class representative was filed with the EEOC.[2]

*Evans* has recently been reversed by the United States Supreme Court, *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), which held that there was no continuing violation. The reversal eliminated any support that *Evans* might otherwise have provided for the plaintiff's theory.

■ At the time that Mrs. Schroeder was forced to leave her job, she knew all of the effects of the corporation's action. Stated in another way, everything that has occurred and all of the effects that Mrs. Schroeder will continue to feel in the future arise out of the allegedly discriminatory act which was taken on October 17, 1972 or prior acts. It was upon that date that whatever causes of action Mrs. Schroeder may have arose, and all applicable statutes of limitation began to run from that date. *See also Hiscott v. General Electric Co.*, 521 F.2d 632, 635 (6th Cir., 1975). The fact that the plaintiff might be able to prove that a pattern or practice of sex and/or age discrimination has continued to exist at her former place of employment is also of no help to her. To be a suitable representative of a class allegedly victimized by discrimination, one must file a complaint in a timely manner. That there may be others

against whom discriminatory acts are continuing does not toll the statute of limitations against one whose cause of action would otherwise be time barred.

Having arrived at this conclusion, it is appropriate to grant the motion to dismiss on all claims with a limitation period of less than three years. This would eliminate the claim brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, as the plaintiff would have had to file a complaint with the Secretary of Labor within 300 days of the alleged violation, and this she did not do. That claim is, therefore, dismissed.

The plaintiff's similar claim under the Michigan Fair Employment Practices Act (FEPA), M.C.L.A. §§ 423.301, .303a, M.S.A. §§ 17.458(1), .458(3a), is likewise time barred. The procedural section of that statute provides that any aggrieved individual "may . . . make, sign and file with the board, within 90 days after the alleged act of discrimination, a verified complaint in writing . . ." M.C.L.A. § 423.307(b) M.S.A., § 17.458(7)(b). This she failed to do in a timely manner. The claim based solely upon the FEPA statute is dismissed.

■ Plaintiff also asserts a state recognized civil action for age discrimination in employment based upon the FEPA but independent of the statute. An action independent of the FEPA was recognized by the Michigan Supreme Court in *Pompey v. General Motors Corp.*, 385 Mich. 537, 189 N.W.2d 243 (1971), a case which involved racial discrimination. The Michigan Court of Appeals has recently held that a "Pompey type" of judicially recognized civil action exists in age discrimination as well. *Hernden v. Consumers Power Co.*, 72 Mich. App. 349, 249 N.W.2d 419 (1976). This Court is not, however, bound by the Michigan Court of Appeals decision, since it is not a decision on state law by the highest court in the state and this Court is convinced that the Michigan Supreme Court would decide otherwise. *Commissioner of*

---

**2.** *See Franks v. Bowman Transportation Co.*, 424 U.S. at 758 n. 10, 96 S.Ct. 1251.

*Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). The Court of Appeals in *Hernden* felt that it was required to reach its conclusion solely by reason of the Michigan Supreme Court's decision in *Pompey*. This Court believes that the panel of the Michigan Court of Appeals misread *Pompey* and that the basis for the *Pompey* holding regarding race discrimination does not exist with respect to age discrimination.

In *Pompey*, the Michigan Supreme Court was dealing with racial discrimination. It held that insofar as that "specific civil right" (385 Mich. at 551, 189 N.W.2d 243) is concerned, the remedies under the statute and common law are cumulative. In arriving at its conclusion, the Michigan Supreme Court relied on a number of its earlier decisions which had held that a person had a civil cause of action against a person that had discriminated against him/her on the basis of race in violation of a criminal statute. *See St. John v. General Motors Corp.*, 308 Mich. 333, 13 N.W.2d 840 (1944); *Bolden v. Grand Rapids Operating Corp.*, 239 Mich. 318, 214 N.W. 241 (1927); *Ferguson v. Gies*, 82 Mich. 358, 46 N.W. 718 (1890). It also relied on the judicial remedies provision in the 1963 Constitution which provided for the preservation of judicial remedies for rights "existing at the time and those subsequently created by legislative enactment or judicial decision . . ." 1963 Constitution, Art. 5, § 29. On the basis of the earlier cases, the Court could have concluded that the previously enacted racial discrimination in employment statute would have been interpreted to allow either a court or administrative remedy and that the judicial remedies provision demanded that both remain available. However, the same section of the 1963 Constitution that contained the judicial remedies provision established the Civil Rights Commission. Prior to its creation there was no constitutional prohibition against age or sex discrimination; no criminal statute as to either type of discrimination had ever been construed to create a civil cause of action. Thus there were no judicial remedies to be preserved by the "judicial remedies provision" of Article 5, section 29 of the 1963 Constitution. Furthermore, the "legislative enactment" with which we are here concerned, dealing with sex and age discrimination, provided only an administrative remedy. These important considerations lead this Court to conclude that if faced with a sex or age discrimination case, the Michigan Supreme Court would follow the "general rule, in which Michigan is aligned with a strong majority of jurisdictions, . . . that where a new right is created or a new duty is imposed by statute, the remedy provided for enforcement of that right by statute . . . is exclusive." *Pompey*, 385 Mich. at 552, 189 N.W.2d at 251.

■ The other claim that could be affected by the statute of limitations is based upon the Fair Labor Standards Act, 29 U.S.C. § 206(d)(1). Any cause of action arising under the Fair Labor Standards Act must be brought within two years unless the violation is willful, in which case the claim may be brought within three years. *See* 29 U.S.C. § 255(a). Although the parties are in disagreement as to whether the complaint alleges a willful violation of the act, the Court holds that by failing to allege either the defendant's knowledge that it is governed by the act, *see Brennan v. Tar Heel Home Supply, Inc.*, 62 F.R.D. 190, 193 (D.N.C.1974), or that the violation was willful, that the allegations in the complaint are insufficient to justify the imposition of the three-year statute of limitations. The Court also finds, however, that it would be in the interest of justice to allow the plaintiff to amend her complaint and will take the decision on this issue under advisement for thirty days during which time the plaintiff may file the motion to amend and an amended complaint. The allowance of such an amendment would not prejudice the defendant in any way, as it would simply reclassify the alleged violation as willful without affecting the plaintiff's burden of proving the existence of the offense. If filed, the amended complaint would relate back to the time that this case was originally filed.

Other than the statute of limitations problems, a number of the claims based on other statutory provisions have fatal defects. The most obvious problem is presented by the alleged violation of 5 U.S.C. § 7151. It is clear that Section 7151 is intended to apply only to discrimination directed against employees of the United States by the federal government, and the plaintiff is simply not a member of the class of employees to which the statute applies. *See* 5 U.S.C. § 2105 (defines employees covered by provisions of Title 5).

 The conspiracy claim brought under 42 U.S.C. § 1985(3) also suffers from an obvious defect. The only defendant in this case is the Dayton-Hudson Corporation, and the only possible members of the conspiracy, reading the complaint in the light most favorable to the plaintiff, are certain employees of the corporation. It is clear that the corporation cannot conspire with its agents; in legal contemplation the corporation and its agents comprise but a single person, one less than the requisite number for a conspiracy. *See Girard v. 94th Street & Fifth Avenue Corp.*, 530 F.2d 66 (2d Cir.), *cert. denied* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Baker v. Stuart Broadcasting Co.*, 505 F.2d 181 (8th Cir. 1974); *Dombrowski v. Dowling*, 459 F.2d 190, 193–96 (7th Cir. 1972); *Milburn v. Blackfrica Promotions, Inc.*, 392 F.Supp. 434 (S.D.N.Y. 1974); *Cole v. University of Hartford*, 391 F.Supp. 888 (D.Conn.1975); *contra Rackin v. University of Pennsylvania*, 386 F.Supp. 992, 1005–06 (E.D.Pa.1974). The entity approach is particularly appropriate where the only defendant is the corporation. There are no allegations in the complaint of individual misconduct by employees of the corporation acting outside the scope of their employment. On the contrary, from the complaint it appears that whatever action was taken by employees was taken in order to effectuate the allegedly discriminatory policies of Dayton-Hudson. *See* Complaint at ¶ 20. The claim based upon Section 2 of the Ku Klux Klan Act, 42 U.S.C. § 1985(3) is, therefore, dismissed.

 The motion to dismiss must also be granted in respect to the claim based upon Article I, Section 2 of the 1963 Michigan Constitution. The civil rights provision in that section, by its very terms, applies only to discrimination on the basis of religion, race, color or national origin. *See* Mich.Const. of 1963, Art. I, § 2. There is also an equal protection clause in the same section, but that clause is of no help to the plaintiff. In *Fox v. Employment Security Commission*, 379 Mich. 579, 153 N.W.2d 644 (1967), the Michigan Supreme Court held that the equal protection clause in the state constitution was intended "to afford the same rights as the Federal equal protection clause." *Id.* at 588, 153 N.W.2d at 647. As the decisions grounded on the state equal protection clause make clear, one requirement for its invocation is the same as that required by the Fourteenth Amendment. There must be state action. *See, e. g., Baldwin v. North Shore Estates Association*, 384 Mich. 42, 50–52, 179 N.W.2d 398 (1970); *Fox v. Employment Security Commission, supra. Cf. Vaughn v. Chrysler Corp.*, 382 F.Supp. 143 (E.D.Mich.1974).

The instant case does not involve discrimination based upon religion, race, color or national origin, and there is no state action involved. Therefore, the claim based upon Article I, Section 2 of the Michigan Constitution of 1963 is dismissed.

The Minimum Wage Law of 1964, M.C.L.A. § 408.381, *et seq.*, M.S.A. § 17.255(1), *et seq.*, provides substantially the same protection against sex discrimination in the establishment of wage rates as does the federal Equal Pay Act, discussed earlier. M.C.L.A. § 408.397, M.S.A. § 17.255(17). Whatever relief might be available to Mrs. Schroeder under the criminal equal pay statute, M.C.L.A. § 750.556, M.S.A. § 28.824, would appear to be identical to the potential recovery under the Minimum Wage Law of 1964. The statute of limitations for such an action would be three years. M.C.L.A. § 408.393, M.S.A. § 17.255(13).

 Although the equal pay claim could have been more artfully stated in the complaint, the Court believes that an allegation

that the plaintiff, because of her sex, has been denied "wages and other compensation commensurate to that accorded to similarly situated men," Complaint at ¶ 22, is sufficient to state a cause of action under that statute. The same is true of the claim brought under the federal Equal Pay Act, 29 U.S.C. § 206(d). If the plaintiff amends her complaint within the time allowed by the Court for the federal claim, the state claim would be within the pendent jurisdiction of this Court. The Court will, therefore, reserve its ruling on the motion to dismiss this claim until either an amended complaint has been filed or the time for its filing has expired.

Plaintiff's complaint also alleges three state common law claims: (1) breach of contract; (2) wrongful discharge; and, (3) intentional infliction of emotional distress.

 The breach of contract and wrongful discharge claims will be discussed together, due to their similar nature. The general rule in Michigan is that employment for an indefinite period is an employment at will and may be terminated by either the employer or the employee at any time with or without cause. *See Percival v. General Motors Corp.*, 539 F.2d 1126, 1129 (8th Cir. 1976); *Ambrose v. Detroit Edison Co.*, 367 Mich. 334, 116 N.W.2d 726 (1962); *Adolph v. Cookware Co. of America*, 283 Mich. 561, 278 N.W. 687 (1938); *Lynas v. Maxwell Farms*, 279 Mich. 684, 273 N.W. 315 (1937). Three exceptions have been engrafted upon this general rule over the years. Careful examination of each of the exceptions to the rule reveals that plaintiff's claim falls within none of them. The general rule does not apply when (1) the employment contract specifies a specific term, *McClain v. Township of Royal Oak*, 276 Mich. 185, 187, 267 N.W. 613 (1936); *Brown v. Chris Nelsen & Son, Inc.*, 10 Mich. App. 95, 158 N.W.2d 818 (1968) (when written contract for specific term does not call for service to employers' satisfaction, em-

ployee may only be discharged for cause); (2) the employment was offered for special consideration, such as release from a claim which the individual holds against the prospective employer, other than the services to be performed, *Lynas v. Maxwell Farms*, 279 Mich. 684, 688, 273 N.W. 315 (1937); and (3) the discharge is in retaliation for the employee's claim of a benefit to which (s)he is entitled by law or refusal to perform an unlawful act, *Sventko v. Kroger Co.*, 69 Mich.App. 644, 647–49, 245 N.W.2d 151 (1976). The last of these three exceptions is basically a wrongful discharge theory.[3]

It is the plaintiff's position that her situation falls within the first and third exceptions to the general rule. She also urges this Court to abandon the general rule by substituting a good faith requirement. In a diversity case, the court is required to apply the applicable state law, and it is abundantly clear that the law of Michigan is that employment contracts of indefinite duration are terminable at the will of either party.

 The plaintiff's assertion that she comes within the exception for written contracts for a specific term is based on her interpretation of a personnel handbook entitled "Hudson's and You," a copy of which was attached to the defendant's answer to the complaint. The handbook cannot be construed to be a contract. Its purpose is to inform employees about fringe benefits and privileges provided by the corporation and to inform them as to certain corporate policies. See Exhibit A to Defendant's Answer at 1 [hereinafter "Exhibit A"]. Furthermore, the paragraphs of the handbook which discuss the pension plan and retirement security in general, upon which the plaintiff most heavily relies, do not make any statements which could in any way be interpreted as guaranteeing an employee continued employment until retirement age is attained. It merely describes the manner

---

**3.** One caveat to the first exception is that if an employment contract for a specific term states that the employee's work be to the employer's satisfaction, a court will not substitute its opin-
ion for that of the employer as to whether the employee has performed satisfactorily. *Lynas v. Maxwell Farms*, 279 Mich. 684, 689, 273 N.W. 315 (1937).

in which the retirement plan operates in a cursory manner assuming that the employee is employed up to his/her 65th birthday and retires at that time.

■ Exception number three is also of no help to the plaintiff. The third exception applies to discharges that are made to "get even" with an employee who has either claimed a benefit to which (s)he is entitled by law or refused to take an action on behalf of the employer which is prohibited by law. The most common examples of discharges within this exception are attempts by an employee to claim workmen's compensation benefits, *see Sventko v. Kroger Co., supra,* or an employee's refusal to help his/her corporation during an investigation or trial through perjured testimony.[4] Mrs. Schroeder's situation fits into neither of these categories. She does not claim that she was fired because of any affirmative act on her part taken in an effort to claim a legal entitlement or for her refusal to perform an act from which she would be protected by public policy. Instead, she claims that she was fired because of her age and/or sex. While it would be against public policy if either of these reasons were the basis for her termination, statutory remedies have been provided to protect employees from discharge on the basis of sex or age, and it is not necessary to expand the public policy exception to provide protection for employees for discharges based on status rather than affirmative conduct.

Since Mrs. Schroeder's discharge does not come within an exception to the general rule that employment contracts of indefinite duration are terminable at will, the counts in her complaint which allege breach of her employment contract and wrongful discharge are dismissed for failure to state a claim upon which relief can be granted.

The final state common law ground for relief raised by the complaint is intentional infliction of emotional distress. It is the defendant's position that the plaintiff's exclusive remedy for this alleged injury is to be found in the Workmen's Compensation Act, M.C.L.A. § 418.101 *et seq.,* M.S.A. § 17.237 (101) *et seq.* (1969) [hereinafter referred to as WCA], and that this tort claim must, therefore, be dismissed for failure to state a claim upon which relief can be granted. Plaintiff in response asserts that the type of injury involved is not within the scope of the WCA.

The facts alleged by plaintiff in support of this claim are that members of corporate management put pressure on her to leave her job by (1) making false accusations of poor performance; (2) making false accusations of poor relationships with staff members; (3) fabricating charges of failure to meet department objectives; and (4) making other overt and covert attempts to intimidate her. It is further alleged that these actions were taken in furtherance of an agreement among certain executives to force Mrs. Schroeder out of her job, that it was intended that the actions cause her to suffer severe emotional distress, and that the actions of defendant did in fact cause her to suffer severe and permanent physical and emotional injuries. Finally, she alleges that the actions of her superiors were taken in furtherance of new corporate policies.

Section 301 of the WCA, M.C.L.A. § 418.-301, M.S.A. § 17.237(301) provides:

An employee, who receives a personal injury arising out of and in the course of his employment by an employer who is subject to the provisions of this act, at the time of such injury, shall be paid compensation . . . .

4. The United States Court of Appeals for the Eighth Circuit held in a case decided on July 21, 1976, *Percival v. General Motors Corp.,* 539 F.2d 1126, 1130, that this exception, which it dubbed the "public policy exception," had neither been accepted nor rejected by Michigan state courts at that time and refused to apply it in a case where an employee claimed that he had been fired, *inter alia,* for refusal to give false information to the government. As this case was decided less than a month after the Michigan Court of Appeals decision in *Sventko v. Kroger Co.,* and does not mention that case, it is quite possible that *Sventko* was never brought to the attention of the Eighth Circuit. Nevertheless, for purposes of this opinion, this court will assume that Michigan courts have adopted the public policy exception.

The term "personal injury" is then defined by section 401 of the WCA, M.C.L.A. § 418.401, M.S.A. § 17.237(401), as including a "disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment." One other passage which is of some guidance in determining whether a specific claim is within the class of those intended to be covered by the WCA is found in the Act's title, which states that the purpose of the WCA is to provide compensation to employees for "disability or death resulting from [1] occupational injuries or disease or [2] accidental injury to or death of employees . . . ."

Michigan case law fails to provide a definitive answer. No reported state case deals with the issue of whether injuries resulting from an employer's intentional infliction of emotional distress upon an employee may give rise to a common law tort action or whether workmen's compensation is the sole remedy. An employee does retain a tort cause of action against his/her employer in at least some matters related to employment. In *Moore v. Federal Department Stores, Inc.*, 33 Mich.App. 556, 190 N.W.2d 262, *leave to appeal denied* 385 Mich. 784 (1971), the Michigan Court of Appeals held that an employee's action against her employer for false imprisonment was not barred by the WCA because the injury or damages suffered by the employee in such instance were not within the purview of the Act and that the WCA does not bar suits for injuries for which it does not provide compensation. A significant distinction between *Moore* and Mrs. Schroeder's case, however, is in the type of injury involved. The basis for the appellate court's holding in *Moore* was that "the gist of an action for false imprisonment is unlawful detention irrespective of any physical or mental harm." 33 Mich.App. at 559, 190 N.W.2d at 264 (citation omitted). For this reason, the Court concluded that although the WCA provides coverage for both physical and mental injuries arising out of and in the course of employment, the plaintiff had not "suffered the type of personal injury covered under the Act." *Id.*

In spite of an exhaustive appraisal of reported state workmen's compensation cases, this court does not intend to make a decision on the record before it that may have a significant impact on the future operation of an important state program. To assist the Court in reaching its decision, it would be helpful to have the parties submit additional briefs which discuss certain factors involved in deciding this issue, and it is hereby ordered that they do so. The defendant's brief should be filed within 30 days of the date of this opinion, and the plaintiff's brief should be filed within 30 days of the date that the defendant's brief is filed. The defendant will then have 10 days to respond. The briefs should discuss (1) cases decided by the Michigan Workmen's Compensation Appeal Board which deal with the same or similar claims or other intentional torts (copies of the decisions discussed should be attached) and (2) cases decided by other states having a Workmen's Compensation Act similar to the Michigan WCA. They should also discuss the potential consequences of a holding that the plaintiff's claim does give rise to a tort cause of action against her employer. A decision on the workmen's compensation issue will, therefore, be withheld pending receipt of the supplemental briefs.

Due to the large number of causes of action involved in this motion to dismiss, the Court will recapitulate its holdings. The motion to dismiss is GRANTED as to those claims which are based upon (1) the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*; (2) 5 U.S.C. § 7151; (3) Section 2 of the Ku Klux Klan Act, 42 U.S.C. § 1985(3); (4) Article I, Section 2 of the Michigan Constitution of 1963; (5) the Fourteenth Amendment to the United States Constitution; (6) Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; (7) breach of contract; (8) wrongful discharge; and (9) the Michigan Fair Employment Practices Act, M.C.L.A. §§ 423.301, 303a, M.S.A. §§ 17.458(1), .458(3a). The intentional infliction of emotional distress issue is taken under advisement pending

receipt of the supplemental briefs. Finally, decisions on the federal Fair Labor Standards Act claim, 29 U.S.C. § 206(d) and the Michigan Minimum Wage Law of 1964 claim, M.C.L.A. §§ 408.397, 750.556, M.S.A. §§ 17.255(17) 18.824, will be withheld for 30 days from the date of this opinion and order during which time the plaintiff may amend her complaint to allege a willful violation.

IT IS SO ORDERED.