**Miguel PARETS, Plaintiff,**

v.

**EATON CORPORATION, an Ohio Corporation, Defendant.**

**Civ. No. 8–71714.**

United States District Court,
E. D. Michigan, S. D.

Nov. 1, 1979.

Michael S. Hohauser, Rochester, Mich., for plaintiff.

Albert Calille, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendant.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

CORNELIA G. KENNEDY, Chief Judge.

Plaintiff has brought this action alleging national origin discrimination and breach of his employment contract with defendant. Jurisdiction exists by reason of diversity of citizenship. Defendant has moved to dismiss for failure to state a claim on which relief can be granted and for summary judgment.

### I. STATEMENT OF THE CASE

The plaintiff was employed as an executive for Chrysler Corporation in Bogota, Colombia, when he was contacted by Herbert Hubbens, Vice-President-Management Resources of Eaton Corporation (the de-

fendant), by letter sent from Cleveland, Ohio, and dated December 19, 1975. Mr. Hubbens offered plaintiff the position of Director of Manufacturing Services-South America. The plaintiff accepted by letter dated February 5, 1976, mailed to the Cleveland Office. Another letter was sent from Cleveland to San Jose dos Campos, Brazil, July 29, 1976, which outlines the terms and conditions of employment. The letter requested the plaintiff initial and return it to Cleveland if the terms were satisfactory. (The affidavit of Mr. Hubbens states that the plaintiff accepted these terms by a letter dated August 31, 1976, but a copy of the acceptance does not appear in the record.) The defendant's July 29 letter designated Detroit, Michigan as the plaintiff's "Post of Origin", to which annual home leave fares would be calculated and to which the plaintiff and eligible dependents would be repatriated upon satisfactory conclusion of the plaintiff's International Expatriate assignment. It also contained the following paragraph:

Reassignment

Upon satisfactory conclusion of your foreign assignment, should you wish reassignment to your Post of Origin, you may be assured that the company will do all it can to provide employment of at least equal stature to that which you held prior to assignment in San Jose dos Campos; you shall be entitled to the same rights, both statutory and company, as would apply under the same circumstances in the United States.

The plaintiff also alleges that the defendant made an oral promise to him after he started working that if a similar job should open in the continental United States, it would be his.

The plaintiff alleges that he started working for the defendant in South America, but at a lesser position than the one promised. In a letter dated May 23, 1977, the plaintiff was informed that his position as Manufacturing Services representative in South America was eliminated. The plaintiff claims the defendant fired him because of his national origin, Hispanic, in violation of the Michigan Fair Employment Practices Act and the Michigan Constitution. He claims the defendant intentionally interfered with his prior advantageous relationship and that it breached its contract by not giving him the original position discussed, by not giving him a similar position which had opened in the United States, and by failing to do anything to help him be reassigned.

The defendant asserts that the plaintiff has failed to state a claim upon which relief may be granted. Defendant asserts first that plaintiff was employed by a wholly owned subsidiary, Eaton S.A., not Eaton Corporation (the defendant), and that any claim the plaintiff has is against the foreign subsidiary and not defendant. Which entity employed plaintiff involves factual issues. For purpose of this opinion it is assumed that plaintiff was employed by defendant as he alleges. The defendant claims that between the February 5 letter of acceptance and the July 29 letter of terms, the plaintiff spent a short training period in Cleveland and was offered and accepted another position as manager of a plant in San Jose dos Campos, Brazil and that the letter of July 29, related to the new position, not the original one offered. The defendant denies there was an oral contract to place plaintiff in a similar job in the United States. It claims there can be no breach of an indefinite term employment contract and that plaintiff can assert no claim under the Michigan constitution or statutes because it would be unconstitutional to apply Michigan law to events that happened entirely outside of Michigan. Finally it asserts that Michigan's common law would not be applied by Michigan courts to events in South America. Defendant denies plaintiff was fired because of his Hispanic national origin. It claims he was terminated because a re-organization eliminated the need for his position. While plaintiff claims the designation of Detroit as Post of Origin establishes that the parties intended Michigan law be applied, the defendants deny any such intent.

Defendant argues that any factual disputes are immaterial because 1) Michigan

law does not apply, so plaintiff cannot complain he was fired in violation of Michigan law and 2) under either Ohio or Michigan law, an indefinite employment contract may be terminated at will by either party.

## II. CONFLICT–OF–LAW RULES FOR FEDERAL COURT SITTING IN DIVERSITY

■ The threshold question is what law applies. It is well settled that the federal court sitting in a diversity case must apply the choice of law rules that the forum state court would apply. *See Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Grant v. Bill Walker Pontiac-G. M.C., Inc.*, 523 F.2d 1301 (6th Cir. 1975). This court then must look to Michigan law on each issue to see where the Michigan court would look.

## III. PLAINTIFF'S CLAIM FOR WRONGFUL DISCHARGE IN VIOLATION OF THE STATUTE

### A. PLACE OF INJURY TEST

■ In general, Michigan looks to the place of injury to determine if there is a cause of action for injury to the person or property. *See Abendschein v. Farrell*, 382 Mich. 510, 170 N.W.2d 39 (1969); *Koserkoff v. Chesapeake & Ohio Railway Co.*, 427 F.2d 1049, 1050 (6th Cir. 1970), *cert. den.* 401 U.S. 947, 91 S.Ct. 924, 28 L.Ed.2d 230 (1971); *Kaiser v. North*, 292 Mich. 49, 257 N.W. 325 (1939). In *Abendschein* the Michigan Supreme Court had the opportunity to repudiate the *lex loci delecti* doctrine and adopt the significant contacts or dominant contacts doctrine in resolving choice-of-law problems. This it expressly refused to do. Although the Michigan Court of Appeals appears to have applied a contacts standard in *Storie v. Southfield Leasing, Inc.*, 90 Mich.App. 612, 282 N.W.2d 417 (1979) (D. C. Riley, J., dissenting) the court stated that its decision was based on public policy under facts not applicable here.

### B. APPLICATION OF FORUM LAW BEYOND FORUM'S BOUNDARIES

■ Further, to the extent that plaintiff bases his cause of action for discriminatory discharge on the Michigan Constitution or statutes he fails to state a claim on which relief can be granted. Ordinarily no constitution or statute can have effect beyond the limits of the sovereignty by which it is adopted or enacted. Such exceptions as exist are based on the sovereign's right to establish the duties of its own citizens. The nature of such exceptions was discussed by the United States Supreme Court in *Skiriotes v. Florida*, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1139 (1941). Florida had enacted a criminal statute prohibiting the use of apparatus by deep-sea divers in the taking of sponges off the Coast of Florida. Skiriotes had been convicted of violation of that statute. It was his position that the place where he was arrested was more than three miles from the Florida coast and not within the jurisdiction of that state. Florida claimed that its boundaries extended more than the then traditional three miles. The Supreme Court refused to decide the extent of Florida boundaries. It noted that *Skiriotes* was a citizen of the state of Florida. It considered the question of whether such an enactment, the Florida Statute as applied to its citizens who are subject to the jurisdiction of Florida, is beyond the competency of that state. The Supreme Court held that a state may exercise its authority over its citizens on the high seas. Its authority over its citizens, the Supreme Court stated, is similar to that of the United States over its citizens, which extends to both the high seas and even "in foreign countries when the rights of other nations or other nationals are not infringed". 313 U.S. at 73, 61 S.Ct. at 927. The court held:

"There is nothing novel in the doctrine that a State may exercise its authority over its citizens on the high seas. That doctrine was expounded in the case of *The Hamilton*, 207 U.S. 398 [28 S.Ct. 133, 52 L.Ed. 264]. There, a statute of Delaware giving damages for death was held to be a valid exercise of the power of the

State, extending to the case of a citizen of that State wrongfully killed on the high seas in a vessel belonging to a Delaware corporation by the negligence of another vessel also belonging to a Delaware corporation."

\* \* \* \* \* \*

"But the principle recognized in *The Hamilton, supra*, was not limited by the conception of vessels as floating territory. There was recognition of the broader principle of the power of a sovereign State to govern the conduct of its citizens on the high seas. The court observed that 'apart from the subordination of the State of Delaware to the Constitution of the United States' there was no doubt of its power to make its statute applicable to the case at bar. And the basic reason was, as the court put it, that when so applied 'the statute governs the reciprocal liabilities of two corporations, existing only by virtue of the laws of Delaware, and permanently within its jurisdiction, for the consequences of conduct set in motion by them there, operating outside the territory of the State, it is true, but within no other territorial jurisdiction.' If confined to corporations, 'the State would have power to enforce its law to the extent of their property in every case.' But the court went on to say that 'the same authority would exist as to citizens domiciled within the State, even when personally on the high seas, and not only could be enforced by the State in case of their return, which their domicil by its very meaning promised, but in proper cases recognized in other jurisdictions by the courts of other States.' That is, 'the bare fact of the parties being outside the territory in a place belonging to no other sovereign would not limit the authority of the State, as accepted by civilized theory.' *The Hamilton, supra*, [207 U.S.], p. 403 [28 S.Ct. 133, 52 L.Ed. 264]. When its action does not conflict with federal legislation, the sovereign authority of the State over the conduct of its citizens upon the high seas is analogous to the sovereign authority of the United States over its citizens in like circumstances."

\* \* \* \* \* \*

"The State has applied it [the statute] to appellant at the place of his operations and if the State had power to prohibit the described conduct of its citizen at that place we are not concerned from the standpoint of the Federal Constitution with the ruling of the state court as to the extent of territorial waters. The question before us must be considered in the light of the total power the State possesses (*Castillo v. McConnico*, 168 U.S. 674, 684 [18 S.Ct. 229, 42 L.Ed. 622]; *Hebert v. Louisiana*, 272 U.S. 312, 316 [47 S.Ct. 103, 71 L.Ed. 270]; *United Gas Co. v. Texas*, 303 U.S. 123, 142 [58 S.Ct. 483, 82 L.Ed. 702]), and so considered we find no ground for holding that the action of the State with respect to appellant transcended the limits of that power." 313 U.S. at 77–79, 61 S.Ct. at 929.

The critical factor in *Skiriotes* was his Florida citizenship. The defendant here is not a citizen of Michigan and the sovereign authority of the State of Michigan does not extend to its conduct outside the state absent greater contacts than plaintiff's Michigan citizenship.

*Home Insurance Co. v. Dick*, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930), is indistinguishable from the present case. That action brought in Texas arose over a policy of insurance written in Mexico relating to property located in Mexico and a loss which also occurred there. All things in regard to performance were done outside the state of Texas, either in Mexico or in the State of New York. As the Supreme Court stated:

"The fact that Dick's permanent residence was in Texas is without significance. At all times here material, he was physically present and acting in Mexico. Texas was, therefore, without power to affect the terms of contracts so made. Its attempts to impose a greater obligation than that agreed upon and to seize property in payment of the imposed obligation violates the guaranty against deprivation of property without due process of law." 281 U.S. at 408, 50 S.Ct. at 341.

The instant case is distinguishable from *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973), relied upon by plaintiff, in that the plaintiff's employment was in California, the forum state. He earned his right to benefits in that state and California had jurisdiction to apply its public policy to the provisions of the profit sharing plan of the defendant in which he was permitted to participate because of his California employment, even though the plan was set up in accordance with New York law, where defendant had its principal place of business, and the plan was valid there.

■ *Clay v. Sun Insurance Office, Ltd.*, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964), is distinguishable in critical aspects. While the insurance policy in issue there was written in Illinois, it was a personal property floater, so that defendant, as the court pointed out, was aware that the property might well be taken out of that state. As the court stated in its opinion "Shortly after the contract was made, Clay moved to Florida and there he lived for several years. His insurance property was there all the time. The company knew this fact. Particularly since the company was licensed to do business in Florida, it must have known it might be sued there . . . ." 377 U.S. 182, 84 S.Ct. 1199. Under these circumstances, Florida was not required to give effect to a provision of the insurance policy which required suit be brought within one year of loss, but could apply its own five year limitations. It should be noted that the case did not involve invoking a Florida statute to create a right but rather applied a Florida statute and Florida's public policy to disallow a bar to enforcement of an existing right. By contrast, in the instant case, plaintiff seeks to invoke Michigan law to create a cause of action. Plaintiff, in effect, is saying that all his Michigan constitutional and statutory rights follow him wherever he may go and that he may

enforce them if he can secure jurisdiction over the defendant. He cites no authority for this proposition and, as indicated above, where the sole contact with the forum is a plaintiff's citizenship, the application of the forum's law violates due process. In neither *Merrill Lynch* nor *Clay* was the presence of citizenship of plaintiff in the forum the basis for constitutional application of the forum's statutes. Due process requires some connection between the state of Michigan and the defendant's employment of plaintiff. None exists here. Unless the parties contracted for the application of Michigan's statutes or constitutional and common law remedies, plaintiff has failed to state a claim for relief for national origin discrimination.[1]

Plaintiff urges that the parties contracted for the application of Michigan law to the employment relationship. The employment contract designated Detroit, Michigan as plaintiff's post of origin and stated that upon satisfactory conclusion of plaintiff's foreign assignment he would "be entitled to the same rights, both statutory and company, as would apply under the same circumstances in the United States." Although defendant urges that this clause has no application to plaintiff's present claims, its proper interpretation is disputed.

■ The parties may contract for a particular state's laws as long as the state chosen is reasonably related to the transaction. *See* M.S.A. § 19.1105 (Supp.1979), M.C.L. § 440.1105; *Sheerin v. Steele*, 240 F.2d 797, 799 (6th Cir. 1957), *cert. den.* 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760 (1957); *Duskin v. Pennsylvania-Central Airlines Corp.*, 167 F.2d 727, 730 (6th Cir. 1948), *cert. den.* 335 U.S. 829, 69 S.Ct. 56, 93 L.Ed. 382 (1948). Since the parties intended the plaintiff to be returned to Michigan upon completion of the assignment, applying Michigan law to events relating to the failure or refusal to provide other employment

---

1. Plaintiff has not contended that he has a cause of action for national origin discrimination under Ohio law. Apparently there is no private right of action in Ohio for such discrimination. *Howard v. State Farm Insurance Co.*, 18 FEP cases 1362 (Ohio Court of Appeals, Licking County, 1978), relying upon *Fawcett v. G. C. Murphy & Co.*, 46 Ohio St.2d 245, 348 N.E.2d 144 (1976).

of at least equal stature or the failure to employ him in a like position which had opened up in the United States (if this occurred after the conclusion of his foreign assignment) is not unreasonable. The dispute as to the meaning and intent of this clause cannot be resolved on motion to dismiss.

## IV. PLAINTIFF'S CLAIM FOR BREACH OF EMPLOYMENT CONTRACT

### A. ENFORCEMENT OF AT–WILL CONTRACTS UNDER MICHIGAN LAW

 Defendant seeks dismissal of plaintiff's contract claim on the grounds that under either Michigan or Ohio law, plaintiff was an "at will" employee and could be terminated at any time with or without cause. Michigan courts have uniformly refused to enforce indefinite term employment contracts. *Ambrose v. Detroit Edison Co.*, 367 Mich. 334, 339, 116 N.W.2d 726 (1962); *Adolph v. Cookware Co. of America*, 283 Mich. 561, 568, 278 N.W. 687 (1938); *Lynas v. Maxwell Farms*, 279 Mich. 684, 273 N.W. 315 (1937); *Toussaint v. Blue Cross*, 79 Mich.App. 429, 434, 262 N.W.2d 848 (1977); *Hernden v. Consumers Power Co.*, 72 Mich.App. 349, 249 N.W.2d 419 (1976); and *McMath v. Ford Motor Company*, 77 Mich.App. 721, 259 N.W.2d 140 (1977). Federal courts, applying Michigan law, have consistently applied this rule, *McLaughlin v. Ford Motor Co.*, 269 F.2d 120 (6th Cir. 1959); *Percival v. General Motors Corp.*, 539 F.2d 1126 (8th Cir. 1976); *Giocosa v. Sony Corp.*, (Civil No. 6–71173, E.D.Mich., 1978) and *Schroeder v. Dayton-Hudson Corp.*, 448 F.Supp. 910 (E.D.Mich.1977), *rehearing granted in part on other grounds*, 456 F.Supp. 650 and 456 F.Supp. 652 (1978).

As noted by this court in *Schroeder*, Michigan recognizes two exceptions to this rule: (1) Where special consideration is given by the employee, or (2) where the discharge is in retaliation for an employee's claim to a benefit to which the employee is entitled by law or for refusal to perform an unlawful act. Plaintiff urges that both these exceptions apply in the instant case.

It is clear that plaintiff's allegations are insufficient to enforce an indefinite term contract under the first exception and indeed exhibit (b) of plaintiff's complaint clearly states that he has resigned his position with Chrysler Corporation and has not yet reached a final decision to accept defendant's offer of employment. The Michigan Supreme Court in *Adolph* held, "The action of plaintiff in giving up the practice of his profession was but an incident necessary on his part to place himself in a position to accept and perform the contract and not a price or consideration paid to defendant for the contract of employment". 283 Mich. at 568, 278 N.W. at 689.

 Plaintiff urges that the second "public policy" exception applies in the instant case if it is found that plaintiff's discharge was due to his national origin. This court in *Schroeder* declined to extend the public policy exceptions to instances where Michigan law provided other full and adequate remedies. Although in the total absence of such remedies Michigan courts might well "apply such an exception", plaintiff here had available to him adequate remedies. A remedy was available to plaintiff under Title VII, Civil Rights Act of 1964 and also under Ohio law (Page's Ohio Revised Code Annotated § 4112.02).

### B. ENFORCEMENT OF AT–WILL EMPLOYMENT CONTRACTS UNDER OHIO LAW

 Defendant concedes that Ohio law may be applicable to the employment contract since it is an Ohio corporation and acts relating to the execution and performance of the contract took place in that state. Ohio courts also have consistently held that an employment contract which is not limited in duration is terminable by either party with or without cause. *See Henkel v. Council*, 45 Ohio St.2d 249, 344 N.E.2d 118 (1976), in which the Supreme Court of that state stated:

"The modern rule is that in the absence of facts and circumstances which indicate that the agreement is for a specific term, an employment contract which provides for an annual rate or compensation, but

makes no provision as to the duration of the employment, is not a contract for one year, but is terminable at will by either party." 45 Ohio St.2d at 251, 344 N.E.2d at 119.

See also *Fahrenwald v. Ohio Steel Foundry Co.,* 16 F.2d 658 (6th Cir. 1927) (arising in Ohio). So far as this court has been able to determine there are no Ohio decisions considering public policy exceptions to the general rule permitting termination of indefinite contracts at will.

That portion of plaintiff's first count, breach of contract claims, which charges wrongful termination of his employment fails to state a claim upon which a relief can be granted under the law of either Ohio or Michigan.[2]

## V. CONCLUSION

For the foregoing reasons defendant's motion is granted as to plaintiff's claim for termination of his employment whether based on contract or on Michigan statutes, the Michigan Constitution or the common law of the State of Michigan. The motion is denied as to plaintiff's remaining claims of breach of contract and his claims that he was not given other employment by defendant because of his national origin.

---

**2.** Defendant's motion and both parties' briefs are entirely silent as to the law of Colombia and Brazil. Neither the Michigan courts nor the United States Court of Appeals for the Sixth Circuit have ruled on the precise issue of whether the law of the foreign country may apply if that law is not pleaded or proved. Other courts have presumed the law of a foreign country to be the same as the law of the forum where the foreign law was not proved. See *Louknitsky v. Louknitsky,* 123 Cal.App.2d 406, 266 P.2d 910 (1954); *San Rafael Compania Naviera, S.A. v. American Smelting and Refining Co.,* 327 F.2d 581, 587 (9th Cir. 1964); *Medina v. Hartman,* 260 F.2d 569, 570 & n. 1 (9th Cir. 1958); *Walter v. Netherlands Mead N. V.,* 514 F.2d 1130, 1137 n. 14 (3rd Cir. 1975), cert. den., 423 U.S. 869, 96 S.Ct. 133, 46 L.Ed.2d 99; *Symonette Shipyards, Ltd. v. Clark,* 365 F.2d 464, 468 & n. 5 (5th Cir. 1966), cert. den. 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625; *Seguras Tepeyac, S.A. v. Bostrom,* 347 F.2d 168, 174 & n. 3 (5th Cir. 1965); Annot., 23 A.L.R.2d 1437, § 13, at 1452–53. *See generally* Annot., 75 A.L.R.2d 529.

While the Supreme Court has refused to presume the common law applies in foreign countries which are based on the civil law (*see Cuba Railroad Co. v. Crosby,* 222 U.S. 473, 479, 32 S.Ct. 132, 56 L.Ed. 274 (1912)) and the Ninth Circuit held that *Crosby* precluded applying the law of defamation of Washington to a defamation which occurred in Peru where the law of both had been modified by statute (*see Philp v. Macri,* 261 F.2d 945, 948 (9th Cir. 1958)), more recently another court had no problem applying forum law where the law of France had not been pleaded nor proved. *See Leary v. Gledhill,* 8 N.J. 260, 84 A.2d 725, 729 (1951); Annot., 75 A.L.R. 529, § 6, at 539.

Since the issue has not been argued the court does not reach any decision on this issue.